W. D. Haden et al. [1] v. Commissioner. Haden v. Commissioner
Docket Nos. 109477-109480, 110300-110303.
United States Tax Court
1943 Tax Ct. Memo LEXIS 43; 2 T.C.M. (CCH) 1029; T.C.M. (RIA) 43493; November 30, 1943
*43 B. L. Morse, Esq., 305 Haden Bldg., Galveston, Tex., for the petitioners. Samuel G. Winstead, Jr., Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: These consolidated proceedings involve deficiencies in income tax as follows: Docket No.
Petitioner
Year
Deficiency
109477
W. D. Haden
1939
$1,246.34
109478
Lucy L. Haden
1939
1,246.34
119479
D. T. Austin
1939
514.77
109480
Kate Austin
1939
463.68
110300
D. T. Austin
1940
2,619.06
110301
Kate Austin
1940
2,619.06
110302
Lucy L. Haden
1940
4,627.04
110303
W. D. Haden
1940
4,627.04 The adjustment now contested resulted from the respondent's determination that gains and losses in the taxable years resulting from sales of real estate by the partnership of Haden & Austin should be treated as ordinary rather than as capital gains and losses. Findings of Fact Petitioners, W. D. Haden and Lucy L. Haden, are husband and wife. During 1939 and 1940 they were residents of Galveston, Texas, and they filed their Federal income tax returns for such years on a community property basis. Petitioners, D. T. Austin and Kate Austin, are also husband and wife. During the taxable *44 years they were residents of Houston, Texas, and they filed their income tax returns for such years on a community property basis. Sometime prior to December 1, 1933, when they entered into a written agreement, W. D. Haden and D. T. Austin, as equal partners, had formed a partnership known as Haden & Austin to engage in the road contracting business, with the principal place of business in Houston, Texas. During the period 1923 to 1933, the partnership invested approximately $300,000 of accumulated profits in real estate. A tract of 48.7 acres acquired in 1933 had been subdivided before it was acquired by the partnership and some parcels already had been sold to various individuals. The partnership sought out these individuals subsequent to 1933 and bought out their holdings in order to complete its ownership of the entire tract. The total real estate acquisitions were considerable and involved a number of individual purchases of varying size, at least eleven of which are indicated on the partnership returns (Form 1065) for 1938 through 1940, which are in evidence. Partnership profits were invested in realty because Austin, who was the managing partner, believed it to be the best *45 form of investment at the time. It also gave the partnership an advantageous credit rating in connection with its road contracting business. At some undisclosed time the partnership concluded that its real estate holdings could be disposed of at a profit, but a purchaser for the entire amount could not be obtained. Taxes had also increased on the property. A plan was adopted to subdivide and develop the land. When a subdivision would be planned, the partnership would put in and dedicate streets, permanent pavements and sewers. Gas and other utilities would be arranged for. Agreements pertaining to complete sections, comprising several lots, were made with various builders. The partnership held the title or retained a lien and individual lots were conveyed or the lien released to the builders, or ultimate purchasers, upon erection of a house and satisfactory arrangements made for the purchase price. Building restrictions were imposed by the partnership in order to protect the balance of its real estate holdings. There was submitted in evidence, as typical of the agreements entered into with builders, a copy of an agreement dated April 19, 1940, between the partnership (referred *46 to as sellers) and B. B. Smith (referred to as buyer). The agreement recites that sellers agree to sell and buyer agrees to buy 20 described lots, as shown on a recorded plat of "Sunset Terrace." The selling price per lot is fixed in the agreement. Five hundred dollars was paid upon execution of the agreement and the buyer agreed to pay an additional $2,000 upon the completion by the sellers of certain improvements upon the property, consisting of the paving of two streets, installation of curbs and gutters in front of all lots and also on the sides of two lots, and installation of water lines and sanitary sewers to serve all lots. The buyer was to install sidewalks at his expense. Gas, electricity and telephone were to be made available to each lot without any cost to purchaser. The buyer obligated himself to purchase two or more lots each month from the sellers, at the fixed price, in cash, until all 20 lots had been purchased. Upon payment of the purchase price for each lot, the sellers were to cause a general warranty deed to be issued to the buyer. The $2,500 first paid was agreed to constitute "earnest money," to be applied only against the purchase price of the last three lots *47 and to be forfeited as liquidated damages unless at least two lots were purchased. The buyer was given the right to start the construction of houses on any of the lots before the purchase. It was agreed that the property would be conveyed to the buyer subject to certain recorded restrictions; that any house constructed on the two corner lots must have a garage attached or a trellis tunnel; and that a neighborhood committee, of which Austin was one of the three members, shall approve construction, location and designs of any buildings to be constructed. On September 15, 1937, the partnership (as first party) entered into an agreement with J. H. Weisenberger (as second party), who undertook and agreed to sell for the partnership a tract of 12.92 acres, referred to at the hearing as "Shadyland Addition." The agreement recites that the land had theretofore been subdivided into lots and blocks, refers to minimum prices set for each tract and states that Weisenberger shall have no authority to sell any tract for less than the stipulated minimum price. As compensation for Weisenberger's services and for the performance of his obligations it was agreed that he should be entitled to be paid *48 as a commission for the sale of each lot all amounts collected over and above the minimum established price Weisenberger's authority to make sales was limited strictly to the terms of the agreement, as therein set forth, and by the terms of a printed form of sales contract agreed upon by the parties, the latter not having been submitted in evidence. Weisenberger was not authorized to make any representations or statements to purchasers except such as were embodied in the printed form of contract. Upon full payment of the purchase price for which each tract was sold, the partnership agreed to execute, acknowledge and deliver to the purchaser a general warranty deed and a certificate of guaranty of title. Weisenberger agreed to exercise the utmost diligence in the matter of the sale of the land and premises covered by the contract and, at his own cost, advertise the property for sale, and employ and pay such salesmen as may be necessary. Weisenberger, at his expense, was to secure approval of the plat and have it recorded. Also at his expense he was to have the land surveyed, the corners of the lots marked, and cause the streets in the subdivision to be graded. If any contract of sale *49 to a purchaser lapsed or terminated, Weisenberger agreed, when requested by the partnership, to use his best efforts to secure another purchaser. Payments by purchasers were to be made to a stated bank, one-half of each payment to be paid over to Weisenberger until his commission on the particular sale had been paid in full. Until such time, Weisenberger was to bear one-half of the collection expense on the sale. Thereafter the method of collection was at the discretion of the partnership, which was to bear all collection expense. Weisenberger was required to make monthly reports in writing covering all sales made, all contracts executed, all collections made and all other matters relevant to the contract, and he was required to furnish to the partnership all contracts with purchasers promptly after execution. Weisenberger's authority to sell was limited to the surface rights to the land and a 1/64th royalty interest in all minerals under the land, the partnership retaining the balance. Approximately 58 lots were involved in the contract with Weisenberger. All sales were on the installment basis, some running for as long as seven years, although the average was five. Books and records *50 pertaining to these installment transactions were maintained by the partnership. The partnership installed pavements, water and sewage facilities on the property involved. Commencing in 1936 and continuing through, the taxable years herein involved, Haden & Austin frequently and continuously made sales of real estate both in individual lots and in parcels consisting of groups of lots. Some of these sales were made to builders, under contracts similar to the one with Smith, summarized above; some were made pursuant to the contract with Weisenberger; and some by the partnership directly to the ultimate purchasers. Most of the sales were on the installment basis. Income from installment sales made in prior years was received and reported in the taxable years. Other income was derived from cash or installment sales made in the taxable years. The net income from all sales was substantial. The petitioners herein, in their individual Federal income tax returns for 1939 and 1940 reported their respective shares of the partnership gains, as well as a partnership loss incurred in 1940 on the sale of one lot, under the capital gains and losses provisions of section 117 of the Internal Revenue *51 Code. Opinion The sole question in these proceedings is whether, under the facts, the partnership real estate from which the income here in controversy was derived is classifiable as "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" and, therefore, excluded from the definition of "capital assets" contained in section 117(a)(1) of the Internal Revenue Code. The respondent has so classified it and has accordingly applied the ordinary income provisions of the Code rather than the capital gains and losses provisions. The petitioners contend that the partnership of Haden & Austin acquired its real estate holdings primarily in an investment and as an incident to its principal business of road contracting. They deny that the circumstances under which sales were made were such as to justify a holding that the partnership was engaged in a trade or business in respect of its real estate sales, either in the taxable years or in prior years. Several of the considerations advanced by the petitioners are not relevant to the question before us. Thus, it is immaterial that the partnership was originally formed and was principally engaged *52 in the road contracting business during the years under consideration. That the partnership was engaged in one business does not foreclose the possibility of its being simultaneously engaged in another. Furthermore, the purpose for which the partnership originally acquired the real estate, and the motives which subsequently prompted its sale, are not determinative of the question of whether or not gains resulting from sales are ordinary or capital gains. Richards v. Commissioner (C.C.A., 9th Cir., 1936), 81 Fed. (2d) 369. The controlling consideration is whether, under the facts, the manner in which the partnership accomplished the sale of its real estate was such that it must be said to have been in the business of subdividing and selling real estate. Ehrman v. Commissioner, (C.C.A., 9th Cir., 1941) 120 Fed. (2d) 607, affirming 41 B.T.A. 652, certiorari denied 314 U.S. 668. We must also dismiss, as contrary to the facts, the petitioners' argument that the partnership's contract with Weisenberger was one of sale and not of agency. We find nothing in the contract which *53 gives any support to this contention. Weisenberger agreed to perform services for the partnership by selling part of its land, under conditions set forth in the contract, and the partnership agreed to compensate him for his services on a commission basis. Title passed directly from the partnership to purchasers obtained by Weisenberger. Not even momentarily was title vested in him. Weisenberger was, under the contract, the partnership's agent and not its vendee. The facts disclose that Haden & Austin had acquired considerable real estate holdings which had increased in value since their purchase and that the partnership formulated and followed a systematic plan for gradually disposing of the property by developing it for sale in individual lots or groups of lots. A part of the land had been subdivided before the partnership acquired it and the balance sold was subdivided by the partnership prior to sale. Necessary improvements, such as streets, sidewalks, water and sewage facilities were installed by the partnership, which also made arrangements for utilities. One group of lots, Shadyland Addition, was partially improved by the partnership and partially by Weisenberger, pursuant *54 to his contract. The sales, once commenced in 1936, were thereafter frequent and continuous and the net income therefrom was substantial. Although an occasional sale of land held as an investment is ordinarily not to be classed as a business, though profit results, cf. Snell v. Commissioner, (C.C.A., 5th Cir., 1938), 97 Fed. (2d) 891, when sales are frequent and continuous, and not isolated and casual the course of dealings is properly classifiable as a "trade or business". James Lewis Caldwell McFaddin et al., 2 T.C. 395, 405; R. J. Richards, 30 B.T.A. 1131, aff'd. Richards v. Commissioner, supra;Ehrman v. Commissioner, supra;Snell v. Commissioner, supra.The record in this case establishes that from 1936 through the taxable years involved the partnership systematically, frequently and continuously made sales of land to its customers obtained for that purpose. The cumulative effect of such sales constituted a business. The land thus sold is properly described as "property held by the taxpayer primarily *55 for sale to customers in the ordinary course of [its] trade or business", section 117(a)(1), supra, and by virtue of this fact gains and losses resulting from sales were properly treated as ordinary rather than as capital gains and losses. We therefore sustain the respondent's determination of deficiencies in these proceedings. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Lucy L. Haden; D. T. Austin; and Kate Austin.↩