Viggo Gruy v. Commissioner. Dagmar Gruy v. Commissioner. Joseph Gruy, Jr. v. Commissioner.
Gruy v. Commissioner
Docket Nos. 20938-20940.
United States Tax Court
1950 Tax Ct. Memo LEXIS 243; 9 T.C.M. (CCH) 235; T.C.M. (RIA) 50068; March 21, 1950
*243 The real estate sold by petitioners in the taxable year 1945 was not sold in the ordinary course of their trade or business, and the resultant gains are not taxable as ordinary income, but constitute capital gains. E. H. Suhr, Esq., 2201 2nd Nat. Bank Bldg., Houston 2, Tex., for the petitioners. John P. Higgins, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve income tax deficiencies for the calendar year 1945, as follows: Docket No.
Petitioner
Deficiency
20938
Viggo Gruy
$655.35
20939
Dagmar Gruy
490.37
20940
Joseph Gruy, Jr.
482.97
The sole issue is whether the gains realized by the respective petitioners from the sale of certain lots in 1945 were taxable as ordinary income. The cases were submitted on oral testimony and documentary proof. Findings of Fact The petitioners are individuals residing at Hebbronville, Texas. Their respective income tax returns for the calendar year 1945 were filed with the collector of internal revenue for the first district of Texas. Petitioners, upon the death of their mother, Lucile Gruy, in 1933, each acquired *244 by devise a one-third undivided interest in certain lots situate in the towns of Hebbronville and Beeville, Texas. Petitioner Dagmar Gruy became 21 on June 14, 1943. During the taxable year 1945 she was a student at the University of Texas at Austin. Petitioner Viggo Gruy became 21 on October 30, 1944. From March 25, 1943, until February 1946, he was in the service of the United States armed forces. Petitioner Joseph Gruy, Jr. in the taxable year 1945 was a minor. In that year he was a student at A. & M. College, at College Station, near Bryan, Texas. On June 7, 1948, petitioner's disabilities of minority were removed by a judgment in the District Court of Jim Hogg County, Texas, and thereupon his guardian was discharged and the estate in the possession of the guardian was delivered to petitioner. The town of Hebbronville, Texas, was originally laid out by Mr. Hebbron. It was originally 20 blocks in area. In 1902 or 1903, Viggo Kohler, grandfather of petitioners, purchased land adjacent to the original townsite. In 1913 a new county, Jim Hogg County, was formed. Hebbronville is the county seat and only town in that county. Kohler laid out a subdivision on his land adjacent *245 to the original townsite. Upon his death the property went to his daughter, the mother of these petitioners, who, on her death in 1933, devised it in equal shares to the petitioners. In 1945, Hebbronville was an unincorporated town of about 3,000 inhabitants. The streets of the town were not paved, there were no sidewalks and no municipal sewage disposal system. Joseph Gruy, father of petitioners, has been engaged in ranching and cattle raising, and was so engaged in the taxable year 1945. During the taxable year 1945 and prior thereto he has sold, on behalf of petitioners, various lots in Hebbronville. The lots were sold singly and not in groups. During the years 1939 to 1945 the number of lots sold and the gross selling price were as follows: Number
Gross Sell-
Year
of Lots
ing Price
1939
14
$ 3,375
1940
24
6,250
1941
15
4,075
1942
14
2,535
1943
54
19,395
1944
40
17,920
1945
29
14,630
Neither Joseph Gruy nor any of the petitioners has ever installed any water lines, gas lines, electric lines, power lines, sewer lines, sidewalks, curbs, street surfacing, drainage or other improvements, and has never paid for any improvements on or *246 to these lots, nor did any of them ever subdivide any real estate. Neither Joseph Gruy nor any of the petitioners has ever advertised in any manner that such lots were for sale, nor solicited purchasers, and such sales as were made were at the request of the purchasers. Neither Joseph Gruy nor any of the petitioners bought any real estate for others, and no one of them ever procured any license to sell real estate. No one of the individual petitioners has purchased or sold any real estate other than the lots in question, except petitioner Viggo Gruy, who purchased the home in which he resides. Joseph Gruy, who sold the lots here involved, received no commission for making the sales of lots on behalf of petitioners. In their income tax returns for 1945, petitioners reported an aggregate joint taxable long-term gain of $6,438.22 as the proceeds of the sale of such 29 lots situated in Hebbronville, Texas. Each petitioner reported a one third of the aggregate gain as his individual taxable gain. The respondent determined the aggregate gain of $12,876.44 constituted ordinary income, and increased each petitioner's taxable income accordingly. Opinion The question here is whether *247 the gain realized by petitioners from the sale of lots in 1945 is taxable as ordinary income or as capital gain. The determination is one of fact. Since the ultimate answer turns upon a consideration of all the facts in their relationship to the situation as a whole, we think no useful purpose will be served by analyzing and distinguishing the authorities relied upon by the parties in support of their respective positions. Applying the well-recognized criteria for determining the distinction between dealer and investor sales, we are to ascertain in which category, under the facts and circumstances presented in the instant proceeding, petitioners are to be classified. It is obvious from the facts found that the individual petitioners did not have any status as dealers in real estate, since all the sales of lots were handled by their father. If, however, his activites on behalf of petitioners constituted him a dealer, his acts are imputable to them. Commissioner v. Boeing, 106 Fed. (2d) 305; certiorari denied, 308 U.S. 619; Brown v. Commissioner, 143 Fed. (2d) 468. The lots in question were part of the ranch originally owned by petitioners' *248 grandfather. It was subdivided into small residential plots in about 1913. On the death of the grandfather the real estate became the property of the mother of petitioners and on her death in 1933 it was devised, as her separate property, in equal shares to her children, these petitioners. We think, therefore, there can be no question but that petitioners in 1933 acquired a capital asset, as defined in section 117 (a) (1) of the Internal Revenue Code. The next inquiry is whether the activities of the father of petitioners in the taxable and prior years were of such nature and degree as to change the character of such real estate into a property "held" primarily for sale to customers in the ordinary course of a trade or business so as to bring it within the exclusions contained in the definition of a capital asset. The record discloses that Joseph Gruy, father of petitioners, was primarily engaged in the business of ranching and cattle raising; that he neither bought nor sold real estate other than such sales of lots as he made for petitioners and except an occasional purchase and sale of investment real estate on his own behalf. He did not hold himself out *249 as a dealer in real estate, and received no commissions for the sales he made on behalf of petitioners. He held no license as a real estate dealer. No subdivisions were made of the real estate owned by petitioners and no improvements or installation of facilities or utilities were made with respect to such real estate during the ownership of petitioners. There were no advertisements and no"for sale" signs were ever erected upon such real property. There was no solicitation of buyers, and the entire activity consisted of the mere acceptance of offers of purchasers. The single factor present here indicative of a dealer status is the number and continuity of the sale of lots. The evidence discloses that the number of sales between 1939 and the taxable year 1945, inclusive, ranged from a low of 14 to a high of 54. In 1945, 29 sales occurred. To sustain the respondent's contention would require a holding that the mere sale of lots over the years in the limited number of sales here shown was sufficient to constitute the engaging in the real estate business. We are aware of no case where a court has gone that far. Petitioners, relying on Frieda E. J. Farley, 7 T.C. 198, *250 contend that the sales of lots were in the nature of a gradual and passive liquidation of a capital asset. We think the Farley case, supra, is controlling, and it will be followed here. We, therefore, conclude upon the basis of this record that the gains realized in the taxable year 1945 from the sale of lots were capital gains and not taxable as ordinary income. Petitioners' contention is sustained. Decisions will be entered for the petitioners.