Ethel M. Hauk v. Commissioner.
Hauk v. Commissioner
Docket No. 23931.
United States Tax Court
1951 Tax Ct. Memo LEXIS 82; 10 T.C.M. (CCH) 925; T.C.M. (RIA) 51278; September 28, 1951
*82 Held, real estate sold in 1944 and 1945 was not held primarily for sale to customers and petitioner is entitled to capital gains treatment under section 117 (a), I.R.C.
Joseph B. Coolidge, Esq., 12th Floor, Callahan Bldg., Dayton 2, Ohio, and Hugh E. Wall, Jr., Esq., for the petitioner. Hugh F. Culverhouse, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax for the taxable years 1944 and 1945 as follows: Year
Deficiency
1944
$ 3,705.45
1945
47,132.95
The petitioner has conceded $997.38 of the deficiencies. The sole issue presented for consideration is whether or not profits derived from the sale of real estate in 1944 and 1945 were gains from the sale of capital assets or income from property held primarily for sale to customers in the ordinary course of a trade or business of the petitioner. Findings of Fact The facts stipulated are so found. The petitioner, Ethel M. Hauk, is a resident of Dayton, Ohio, who spends six to eight months of the year in Florida. The tax returns for the years here involved were filed with the collector *83 of internal revenue for the first district of Ohio. After her husband's death in 1927, petitioner owned a majority of the stock of two Florida real estate corporations, the Bayview Estates Corporation and the Municipal Investment Company. Petitioner advanced money to these corporations and received, as security, mortgages which were subsequently foreclosed. She bought in at the foreclosures and by 1938 she had acquired, by means of these and other purchases, substantial real estate holdings in and near Miami which she hoped and expected to appreciate in value. The Miami real estate market was depressed during the period between 1929 and 1937 but gradually picked up and, by 1945, had improved considerably. In the late 1930s petitioner began selling some of her Miami properties and she continued to sell in every year from 1939 through 1948 with the exception of 1942 and 1947. In 1944 taxpayer made nine sales of her Florida properties, sustaining a loss on one sale. She also received in 1944 the last installment payment for a sale made in 1940. In 1945 the petitioner engaged in 38 sale transactions and also received the purchase price for a tract of land conveyed to the Village of Miami *84 Shores in 1937 under an agreement to pay $20,000 within 20 years. A majority of the petitioner's sales were made after the properties had been held for several years. All but a very few of the sales resulted in profits. She continued to buy Miami properties on a lesser scale after 1937 and by 1949 her total investment in Florida real estate, including the cost of her Miami home, aggregated $394,999.17. By 1949 property sold represented a cost to her of some $142,000 and constituted less than one-half of her total properties. On one of the lots that she had purchased she built a hotel which she presently operates. Most of the real estate sold by the petitioner consisted of unimproved lots or acreage, although one tract was replatted by petitioner to meet building ordinance requisites and one purchaser recorded a plat. Some of her larger tracts were sold in smaller lots to different perrsons. Petitioner made no installations of services or facilities on the properties acquired; did no grading or landscaping; maintained no office in Miami; employed no sales representative; and made no sales effort. She did not advertise or post the property for sale nor did she list the property with *85 any broker. Persons who desired to buy went to the county records and ascertained the name of the owner and thereafter sought out petitioner with an offer to purchase. In 1944 and 1945 taxpayer reported her sales profits as capital gains. The respondent determined that the lands sold during the taxable years were held primarily for sale to customers in the ordinary course of her trade or business and treated the gain from the sales of such property as ordinary income. We make the ultimate findings that petitioner did not hold the property sold during the taxable years for sale to customers in the ordinary course of her trade or business. Petitioner was not engaged in the real estate business in Miami, Florida. Opinion VAN FOSSAN, Judge: The sole issue for determination is whether or not the sales of property in the taxable years by the petitioner were sales of capital assets under section 117 (a) (1), Internal Revenue Code, [1] or, stated in the language of the statute, whether the real estate was property held by the taxpayer primarily for sale to customers in the ordinary course of her trade or business. The issue is one of fact and depends upon all *86 the pertinent facts when placed in proper juxtaposition and given their relative importance. A number of recognized tests have been adopted by the courts for such determinations. Among the matters to be inquired into are the taxpayer's purpose in acquiring and disposing of the property; the continuity of sales activity; the number, substantiality and frequency of the sales; and the owner's activity in developing the property and his efforts to sell. W. T. Thrift, Sr., 15 T.C. 366. No one fact is conclusive. Inquiry into the petitioner's purpose in acquiring the property leads us to the conclusion that the properties were bought *87 as investments with the hope and expectation that they would appreciate in value. During the period from 1927 through 1938, when she purchased most of her holdings, the real estate market was depressed. The majority of petitioner's properties were never sold and of those that were sold, the greater portion was held for a considerable length of time. Her purpose in selling her holdings was the realization of the profits available because of the appreciated property values. When purchase offers met her requirements, the petitioner sold. Much of her property remained in her possession as no efforts were made to sell or develop it. The 1944 and 1945 sales were made not as an incident to, nor for the purpose of, carrying on a business but for the realization of a profit by the gradual and passive liquidation of her assets. Thomas E. Wood, 16 T.C. 213. Inquiry into sales activity demonstrates that the petitioner was not engaged in the business of selling real estate. She considered and acted upon offers made to her but she solicited no offers, sought no purchasers, and set no prices for her properties. She did not advertise; posted no "For Sale" signs; had no office; employed *88 no agents or solicitors. She merely held the properties and waited for a purchaser to appear. During the years in question the petitioner sold a substantial number of properties and by 1949 had sold over one-third of her Florida properties in terms of cost. These facts are not conclusive, however. The volume, continuity and frequency of sales are not determinative of the issue when the taxpayer remains entirely passive. Frieda E. J. Farley, 7 T.C. 198. The holding of land for sale and the acceptance of satisfactory offers do not constitute the business of selling real estate without some other activity indicative of a trade or business. Phipps v. Commissioner, 54 Fed. (2d) 469, modifying 19 B.T.A. 1293. Such activity is lacking here. The fact that petitioner operates a hotel in Florida and may have been engaged in the management of real estate elsewhere does not establish that she was engaging in the real estate business in Florida as well. Inquiry into the petitioner's activities in developing the properties and her efforts to sell strengthens the conclusion reached. The extent of the taxpayer's activity with or concerning the subject matter *89 is the predominating test. Boomhower v. United States, 74 Fed. Supp. 997. Taxpayer hired no brokers, posted no signs and did no advertising. She did not hold herself out or classify herself as a real estate dealer, as did the taxpayer in White v. Commissioner, 172 Fed. (2d) 629, cited by respondent. The lots and acreage were generally sold in the same condition as purchased. No program or plan was followed in the sale of the properties; petitioner neither developed nor improved the lots nor did she determine which property would be sold other than by accepting or rejecting offers made to her. To conduct a business implies that some time and effort is spent in carrying on such business. Snell v. Commissioner, 97 Fed. (2d) 891, affirming C. Perry Snell, 34 B.T.A. 1315. The petitioner did not attempt to sell her holdings, improve or develop the properties themselves, or undertake any program to promote their sale. She did not engage in any activity that could be construed as the promotion of a trade or business. We do not share respondent's view that C. E. Mauldin, 16 T.C. 698, controls the situation here. The petitioner *90 in the present instance did not subdivide her properties to meet the demands of the community nor did she follow any planned program for the sale of her properties as was true in the Mauldin case. In decision there was present the element of business activity that is lacking here. In the light of all the facts we conclude that the petitioner was not engaged in the trade or business of selling real estate in 1944 and 1945 and that the properties were not held by her primarily for sale to customers in the ordinary course of her business. Accordingly, the profits from her sales were properly reported as gains from the sale of capital assets. Decision will be entered under Rule 50. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *.↩