**AUSTIN et al. v. UNITED STATES.**
**Civ. No. 6721.**

United States District Court,
S. D. Texas, Houston Division.
June 29, 1953.
Supplemental Opinion Aug. 21, 1953.

Paul Port, Houston, Tex., for plaintiffs.

Brian S. Odem, U. S. Atty., and Wm. R. Eckhardt, Asst. U. S. Atty., Houston, Tex., for defendant.

CONNALLY, District Judge.

This consolidated action is one to recover income taxes allegedly illegally assessed and collected for the calendar

years 1946, 1947 and 1948.[1] It presents two questions, namely, whether certain gains from the sale of real estate should be treated as capital gains, under the terms of Section 117 of Title 26, U.S. C.A., or as ordinary income, and whether certain income properly was taxable to the taxpayer D. T. Austin, or to the estate of his deceased wife Kate Ida Austin, as a separate taxable entity. The facts arise in the following manner.

In 1917, the taxpayer D. T. Austin entered into an equal partnership with W. D. Haden, operating under the name of Haden & Austin, to engage in the road construction business. Mr. Austin was managing partner and was actively in charge of the partnership business. The business prospered from its inception. In about 1923, the partners began the practice of investing their surplus earnings in tracts of unimproved real estate in and near the City of Houston. Between 1923 and 1933, a number of such tracts were purchased at a total cost of about $300,000. Little, if any, of the property was sold during that time. Title was taken in the names of the partners jointly, and the real estate was reflected as an asset on the partnership books. These tracts were not used in the partnership venture except incidentally, in that one or two lots from time to time were used for the storage of equipment, and by reason of these assets appearing on the balance sheet, the company was in position always to show a strong financial statement.

About 1938, the partnership began selling certain of these properties, including one which was then within the limits of newly incorporated West University Place, a suburban community. Being unable to sell the entire tract on favorable terms, the property was subdivided. Streets and utilities were installed, restrictions imposed, and the lots were sold to builders in substantial blocks. The profits therefrom were returned as long term capital gains, and by reason thereof litigation resulted, which terminated with a holding by the Tax Court (2 T.C.M. 1029) that these profits (for calendar years 1939, 1940) should be taxed as ordinary income. Thereafter, the partnership assiduously refrained from subdividing or improving any of its real estate.

The partnership terminated December 31, 1944, upon the death of Mr. Haden. Pursuant to terms of the partnership agreement, Mr. Austin, as the surviving partner, purchased the tools, equipment, and machinery of the partnership, and completed the few road construction contracts then in progress. At about that time, Mr. Austin likewise suffered a serious illness, as result of which, to the present time, he has been in a state of impaired health. He disposed of the road building equipment and has not engaged in the road building business since the death of his partner.

Immediately after Mr. Haden's death, the real estate, sales of which are here in question, was jointly owned by Mr. Austin (½ interest); Mrs. Haden, surviving wife of the deceased partner (¼ interest, as her community share); and the estate of Mr. Haden (¼ interest). On January 18, 1946, the death of Kate Ida Austin, wife of D. T. Austin, occurred, and thereafter Mr. Austin's original ½ share was owned ¼ by himself, as his community portion, and ¼ by the estate of his deceased wife.

After these events, and during the years in question, Mr. Austin continued to dispose of the partnership real estate holdings. In doing so, he did not advertise or seek out purchasers, but when he was approached by a purchaser, or by an agent who had a prospective purchaser, he entered freely into negotiations looking toward a sale. If satisfactory terms were agreed upon, he recommended the sale to the Haden interests, who almost invariably accepted his ad-

1. C.A. 6721, Calendar 1946, D. T. Austin, Plaintiff.
C.A. 7261, Calendar 1947, D. T. Austin & Wife, Verna S. Austin, Plaintiffs.

C.A. 7262, Calendar 1948, D. T. Austin & Wife, Allene Austin, Plaintiffs.

vice in the matter. On some of the sales, a commission was paid to the procuring agent, although most of them were handled by Mr. Austin personally, in which cases no commission was paid. Mr. Austin never bought any property during this period for himself or the other joint owners, never held a real estate dealer's license, and never made sales of property other than his own, as hereinabove set out.

As reflected by the stipulation, one sale of such jointly owned property (.267 acres) was made in 1946; five sales ((a) 36.023 acres; (b) .534 acres; (c) .430 acres; (d) 33.5 lots in Bellaire Townsite; (e) .178 acres) were made in 1947; and one sale (.213 acres) was made in 1948. By way of comparison, three sales were made in 1944; thirteen were made in 1945; two were made in 1949; and three were made in 1950. The partnership returns for periods prior to January 1, 1945 treated profits from such real estate sales as ordinary income. Those for all later periods treated them as capital gains.

Under these facts, the Government contends that the periodic sales of real estate by Austin, on behalf of the partnership and its successors in interest, continue to bear the "ordinary course of business" brand as result of the Tax Court holding; that there has been no definite change in the sales practices since that time, or since January 1, 1945; and that during the intervening years, including the years in question, Austin has been engaged in the real estate business, for tax purposes. It points out that the sales were frequent and substantial; and the Government urges that the testimony to the effect that, after the Tax Court holding, Austin was careful to avoid any subdivisional activities in connection with the sales, should be interpreted as meaning that a studied attempt was made to avoid the outward appearances of engaging in this business, although the substance was always present.

The taxpayer, on the other hand, contends that this was simply an orderly liquidation of capital assets, begun in earlier years, and continued or perhaps hastened by the death of Haden, of Mrs. Austin, and by Austin's illness and infirmities; he argues that a decisive factor in the Tax Court holding was the subdivisional activity, and the aggressive sales campaign conducted by the partnership through its agent; and argues that as these facts did not prevail during the years in question here, a different result should ensue.

The books are replete today with authorities applying the statutory definition of "capital assets" found in Section 117 [2] to varying fact situations. [3] No inflexible formula has been devised which will uniformly give a correct result. Each fact situation must stand on its own bottom. In determining whether certain assets were "capital assets" or constituted "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business", the cases have considered a number of factors, including the continuity of sales, and sales-related activity, over an extended period of time; the efforts and activity of the seller in improving, advertising, and enhancing the marketability of the property; the substantiality of the sales; and the purpose or motive of the taxpayer in acquiring, and

2. Title 26, U.S.C.A. Section 117(a) (1): "The term 'capital assets' means property held by the taxpayer * * * but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *."

3. The plaintiff relies principally on Dunlap v. Oldham Lbr. Co., 5 Cir., 178 F.2d 781; Fahs v. Crawford, 5 Cir., 161 F.2d 315; Phipps v. Comm., 2 Cir., 54 F.2d 469; Boomhower v. U. S., D.C.Iowa, 74 F.Supp. 997; and from the Tax Court, Ethel M. Hauk, 10 T.C.M. 925; Viggo Gruy, 9 T.C.M. 235; Farley, 7 T.C. 198; South Texas Prop. Co. v. Comm., 16 T.C. 1003. The defendant cites Dunlap v. Oldham, supra; Rollingwood Corp. v. Comm., 9 Cir., 190 F.2d 263; Ehrman v. Comm., 9 Cir., 120 F.2d 607; Guthrie v. Jones, D.C.Okl., 72 F. Supp. 784.

disposing of, the property. From time to time and from case to case, emphasis has been placed by the courts first on one, and then on another, of these considerations. The Fifth Circuit [4] and recently the Tax Court [5] have seemed to emphasize the extent of the taxpayer's activity as the most important single consideration.

■ Applying these considerations to the facts of the instant case, I am of the opinion the taxpayer is entitled to capital gains treatment. During the years in question, he at all times maintained the "passive attitude" referred to in the cases.[6] He employed no salesman, posted no "for sale" signs, engaged in no advertising or sales program, and made no improvements to the property. The profits resulted not from any sales activity by the taxpayer or his agents, but from an appreciation in value of the property over a long period of time. There was no purchase of any new land to maintain the "stock in trade".

While the sales were not frequent, they were continuous and substantial, the only considerations which suggest "ordinary income" treatment. But this is explained by the fact that the partnership had been more than ordinarily successful, and with Austin's illness and advancing age, the time was growing short. Both he and the Hadens needed cash. With these explanations, the continuous sales of substantial values in real estate lose much of their normal force as an indication of real estate activity. In my opinion, a taxpayer may maintain an attitude of willingness to sell, and may in fact sell and liquidate his own long-held assets, in the absence of any other indicia of real estate activity, without thereby becoming engaged in the real estate business; and this be true whether the amount so sold be large or small. This is the type of

fact situation which Section 117 was designed to cover.

Kate Ida Austin died testate January 18, 1946. The plaintiff here, as surviving husband, was appointed independent executor of her estate, without bond, and likewise was named sole devisee and legatee thereof. In due course, he offered the will for probate and qualified and entered upon his duties as executor. On January 31, 1947, he filed an estate tax return, and paid the tax therein reflected. This return was not audited by the Collector until May, 1949, at which time a deficiency assessment of $1,674.13 plus interest was made and duly paid. On March 28, 1950, plaintiff prepared and filed with the Probate Court an instrument reciting that the estate of his deceased wife had been fully administered, and all taxes and other obligations owing thereby had been paid; and acknowledging that he, as executor, had transferred, and he individually had received, all of the assets constituting the residue of the estate.

For the years 1947 and 1948 (also for the year 1946, although not involved in this litigation), plaintiff prepared and filed a fiduciary income tax return for Mrs. Austin's estate. In each instance, such return accurately reflected such income, and showed as well that the income had been distributed to Mr. Austin, individually, as sole legatee; hence, no tax was reflected as owing, or paid, by the estate. In each instance, in his personal return, Mr. Austin reflected the income of the estate as his own personal income, and paid the tax thereon. Plaintiff contends here that this manner of treatment was erroneous; that he had no right, under terms of the will or by law of this State, to make distribution, as executor, to himself, individually, as legatee, until the administration was completed; and that the administration was not completed until the estate tax had

4. Dunlap v. Oldham Lbr. Co., supra; Fahs v. Crawford, supra; Snell v. Comm., 5 Cir., 97 F.2d 891.

5. Ethel M. Hauk, supra.

6. Fahs v. Crawford, supra; Farley, supra; Ethel M. Hauk, supra; South Texas Properties Co. v. Comm., supra.

been finally audited and the deficiency assessment paid.

The facts show that the estate of Mrs. Austin consisted solely of her one-half interest in the community assets, consisting principally of the real estate hereinabove mentioned, and certain installment promissory notes and sales contracts resulting from sales of similar real estate made prior to her death. There was no separate property. After her death, Mr. Austin paid the estate tax out of his own funds and, while serving as executor, made no effort to separate and segregate the assets of the estate from his own. No separate books, records, or bank accounts were maintained. Mrs. Austin's estate was appraised at some $300,000, and the debts, if any, were inconsequential.

 The position of the Government will be sustained. I am not at all sure, as the plaintiff contends, that where an estate is abundantly solvent, an independent executor is without power to make partial distribution to the legatees before the estate is fully and finally administered, Cook v. Baker, Tex.Com. App., 45 S.W.2d 161; Redditt v. Quinn, Tex.Civ.App., 215 S.W.2d 367; Tex.Juris. "Decedents' Estates", §§ 196, 693, 694. Article 3432b of Vernon's Civil Statutes of this State, in permitting partial distribution of income to legatees, where an estate is being administered under orders of a Probate Court, does not, in my opinion, negative the power of an independent executor to make available to legatees the same tax advantage. Ordinarily an independent executor may, without order of Court, do or perform any act which an ordinary executor or administrator may perform pursuant to order of Court, Lang v. Shell Petroleum Co., 138 Tex. 399, 159 S.W.2d 478; Rowland v. Moore, 141 Tex. 469, 174 S.W.2d 248. If it be assumed, arguendo, that there was some impropriety or illegality in the executor having made the distribution prematurely, these facts must not be overlooked; first, there were no unsatisfied creditors, and hence no one who was injured or could complain; second, the taxpayer himself made no effort to distinguish between the property which he held as executor, and that which he held individually, and they were completely commingled; and third, he considered, and reported, that the distribution had been made and that he had received the income from the estate after distribution in his individual capacity. Under these circumstances, I do not think he now can be heard to complain. Putting the matter in the light most favorable to the taxpayer, probably he was in position, had he desired to do so, to have segregated the assets and income of the estate; had he so treated the matter, and reported the income as undistributed, probably he could have supported that position in the event it was contested by the Collector. But, having elected to treat the income as distributed to himself, the fact that another avenue was open to him which would have resulted in a tax advantage, of which he did not avail himself, affords no basis for saying that such tax was improperly assessed and collected.[7]

I desire to make it clear that I am not holding (as the Government contends) that the administration terminated during, or prior to, the years here in controversy. Estate of Harwood, 46 B.T.A. 750, and Anderson, 30 B.T.A. 1275, indicate to the contrary. Nor am I holding, as a matter of Texas law, that an independent executor during administration may with propriety distribute part of the corpus of the estate to the legatees. While this is frequently done in practice, I am unaware of any authority specifically permitting it. I am holding here that, during the course of this administration, such distribution in fact was made by the executor, and that the tax should be assessed on that basis.

Portions of the funds so received by the executor and distributed to himself

---

7. The record shows that during this period taxpayer was represented by able counsel in the matters in question.

as legatee constituted income of the estate (as interest, dividends, etc.), while other portions constituted corpus of the estate, of such nature that a capital gain tax was owed by the estate. As the estate was not entitled to take a deduction for a distribution of such corpus, Estate of Huesman v. Commissioner, 16 T.C. 656, but was entitled to a deduction for so much of the distribution as constituted income, a recalculation will be required. Counsel assure me that such calculation may be arrived at by agreement

The foregoing is adopted as Findings of Fact and Conclusions of Law. Clerk will notify counsel, who will present decree.

## Supplemental Opinion.

At the time of filing Memoranda Opinion herein under date of June 29, 1953, which was adopted as findings of fact and conclusions of law, I understood that the few remaining questions not therein discussed were the subject of agreement between counsel. Counsel for the government, however, has moved that additional findings and conclusions covering these questions be filed; and for that reason the following additional findings and conclusions are made:

1. The defendant has pled the Statute of Limitations, contending that recovery by the plaintiff for the years 1947-8 be limited to the amount of taxes paid during the two years immediately preceding the filing of the claims for such years under Section 322 of the Internal Revenue Code. Such plea is sustained, and the plaintiff's recovery will be so limited. Counsel for the plaintiff has conceded this point from the beginning.

2. The Estate of Kate Ida Austin included a number of installment notes, the value of which was included in the estate for estate tax purposes. Included therein was gain upon which income taxes were payable by the Estate during the years 1947-8 when received. Under the terms of Section 126(c) of Internal Revenue Code, a proportionate deduction is allowed in the manner therein reflected. Plaintiff is entitled to such deduction, and said section is applicable to the calculations for the years 1947-8. At the time of trial, I understood counsel for the government to concede the applicability of this section.

3. Certain real estate, and perhaps other assets, of the Estate of Kate Ida Austin were sold during administration. Upon such sales a gain or profit was realized by the Estate. When these funds were distributed by the Estate to the distributee, the question arises as to whether such profit was a distribution of corpus of the estate or of income. Under the law of estates and trusts in Texas, the character of property is not changed by sale, exchange, or substitution. Its character remains the same so long as the property may be traced clearly through various mutations. This is true under the Texas Trust Act. See Article 7425b-1 et seq., Vernon's Annotated Civil Statutes of Texas; and it is likewise true in determining the separate or community character of property (23 Texas Juris., page 89); and see McFaddin v. Commissioner, 5 Cir., 148 F.2d 570. Hence, the proceeds of the sale of corpus of the Estate of Kate Ida Austin remained corpus of the estate in its entirety, and on distribution to the distributee constituted a distribution of corpus of the estate.