## GALENA OAKS CORP. v. SCOFIELD.
### Civ. A. No. 6604.

United States District Court
S. D. Texas, Houston Division.
July 7, 1953.

Leachman, Matthews & Gardere and Wright Matthews, Dallas, Tex., and Price, Guinn, Wheat & Veltmann, Houston, Tex., for plaintiff.

Brian S. Odem, U. S. Atty., and Wm. R. Eckhardt, Asst. U. S. Atty., Houston, Tex., for defendant.

CONNALLY, District Judge.

The plaintiff is a private corporation, chartered under laws of this State in February 1942. In this action it seeks to recover certain income taxes allegedly illegally assessed and collected for the fiscal years ending February 28, 1947 and February 29, 1948. The single question presented is whether profits from the sales of 102 houses, constructed during the years 1943 and early 1944; rented from early 1944 until June 1946; and thereafter sold during the period from June 1946 until August 1947, constituted ordinary income (as contended by the Collector) or constituted the sale of capital assets, as defined in Section 117 of Title 26, U.S.C.A.

The plaintiff corporation at all material times has been controlled by D. H. Canterbury, who has owned 50% of the stock and controlled the remaining 50%, as guardian of the estate of his minor child. Mr. Canterbury, individually, has been engaged in the business of subdividing land, and the construction and sale of houses thereon, for a great many years.

Immediately after incorporation, taxpayer applied to the Federal Housing Administration for the necessary authority and priorities for the procurement of materials to build 97 houses for sale, pursuant to the F.H.A. program to encourage construction of dwelling units in defense areas suffering a critical housing shortage in the early war years. Such authority was granted, and

the 97 houses were constructed and sold during 1942. Profits therefrom were returned as ordinary income for the fiscal year ending February 28, 1943.

Thereafter (late 1942) further application was made for the construction of 105 houses, which likewise was granted, though only 102 were constructed. The F.H.A. regulations then in effect, and subject to which these last mentioned houses were built, required that the contractor rent same to defense workers at a fixed monthly rental. In compliance therewith, the houses were rented as they were completed, and taxpayer continued to rent all of the houses in the project from 1943 until June 1946. Due to changes in F.H.A. regulations, taxpayer was permitted, if it chose, to sell a number of the houses as early as 1943, and was permitted by pertinent regulation to sell and dispose of all of the houses by 1945. Nevertheless, taxpayer sought no permission to make any such sales, and in fact made none until June 1946. Beginning at the last mentioned date, taxpayer began a rather intensive sales program. One of its principal employees (J. B. Brown) was placed in charge of sales. Extensive advertising was taken in the local papers, and one or more "for sale" signs were placed at strategic locations on the property. Prospective purchasers were contacted through the plaintiff's Houston office. The entire 102 houses were sold in a matter of about fourteen months.

In addition to the foregoing facts, which are undisputed, Mr. Canterbury has testified that on behalf of the corporation he decided to go into the construction and rental of these houses in order to secure a lucrative and safe investment; that taxpayer enjoyed a period of almost complete occupancy until the spring and early summer of 1946. By that time, however, he noticed that costs of maintenance and upkeep were rising sharply; that the net rentals produced an unsatisfactory return on the investment; and by that time he considered the investment as a speculative one not suitable for the estate of his minor child. In view of the fact that real estate prices had risen, and returning war veterans provided a ready market, he concluded that it would be the part of wisdom to sell the houses.

The following facts likewise were undisputed. The proceeds from the sales above mentioned were used by the taxpayer for the purchase of unimproved real estate in and near the City of Houston; except for the two groups of 97 and 102 houses hereinabove mentioned, taxpayer has neither bought nor sold any other houses during its corporate existence; neither Canterbury, Brown, nor the corporation held a real estate dealer's license (despite Brown's extensive activities in effecting the sales above mentioned); during the three to four year rental period, taxpayer claimed and was allowed depreciation on the 102 houses, while this was not the case as to the original groups of 97, which admittedly were built for sale; in its income tax returns, taxpayer has described its "kind of business" variously as (a) "real estate subdivision, building rentals"; (b) "real estate subdivision, building, etc."; and (c) for the two years in question "real estate".

Under Section 117(a) and (j) of Title 26, U.S.C.A., taxpayer contends that the foregoing facts compel a finding that the 102 houses constituted its capital assets; that they were acquired and held primarily for rental purposes; and that the sales in question constituted a liquidation of such capital assets. The Government, of course, contends that the taxpayer was in the business of constructing houses for sale; that this program was interrupted, as to the 102 houses, only by reason of F.H.A. regulations, by reason of which it was obliged to rent for a matter of three to four years; and that shortly after such restrictions were removed, the taxpayer continued in its normal business of selling. Hence, the houses were held primarily for sale to customers in the ordinary course of taxpayer's business.

While the determination of this fact issue is not free of doubt, I

find that the Government is right and that the taxpayer has not sustained its burden to show the capital assets character of the property in question. Many of the tests which the courts from time to time have applied for determination of the question are set out in Dunlap v. Oldham, 5 Cir., 178 F.2d 781, and the district court opinion of Boomhower v. U. S., D.C.Iowa, 74 F.Supp. 997. These are the continuity of sales or sales related activity over a period of time; frequency of sales, as opposed to isolated transactions; the activity of the seller or his agents devoted toward improving or enhancing marketability; the extent or substantiality of the transactions; and the reasons or purposes which motivated the acquisition and disposition of the property. Since Snell v. Commissioner, 5 Cir., 97 F.2d 891, which applied the "busy ness" test, probably the time, labor, and effort of the taxpayer or his agents devoted to promoting and effecting the sales in question have received the greater emphasis. Dunlap v. Oldham, supra; Fahs v. Crawford, 5 Cir., 161 F.2d 315; Hauk v. Commissioner, 10 T.C.M. 925.

The application of these tests to the instant case clearly points toward ordinary income treatment. The taxpayer here advertised the property for sale to the general public and aggressively sought out purchasers. The fact that 102 houses were sold within a period of 14 months, at an average price of some $5,200 to $5,400, shows clearly the frequency, continuity, and substantiality of the transactions.

In an exhaustive and able brief, taxpayer contends that this was no more than a conversion or liquidation of an investment, citing Delsing v. U. S., 186 F.2d 59, from the 5th Circuit, and Julia K. Robertson (§ 49,234 P–H Memo T. C.); H. D. Lewis (§ 52,022 P–H Memo T.C.); Adam Schantz, Sr. Corp. (§ 52,122 P–H Memo T.C.); Farry v. Commissioner, 13 T.C. 8; and Thrift v. Commissioner, 15 T.C. 366, from the Tax Court. Some of these are very close in point of fact, notably Delsing and Robertson, where houses were constructed for rent under the F.H.A. program. These authorities, and others which might be cited, recognize that a dealer may also be an investor, or that engagement in the selling phase of the real estate business does not preclude investment in that same business where the activity is carefully segregated, Delsing v. Commissioner, supra; Farry v. Commissioner, supra; and that frequent and substantial sales, standing alone, do not put the vendor in the real estate business, White v. Commissioner, 5 Cir., 172 F.2d 629; Farley v. Commissioner, 7 T.C. 198; South Texas Properties v. Commissioner, 16 T.C. 1003. As was said in Farley v. Commissioner, supra, "We are further impressed by the fact that the sales in question appear to have been essentially in the nature of a gradual and passive liquidation of an asset. We appreciate that the so-called liquidation test has been rejected in certain cases wherein the manner of conducting alleged liquidation was such as to constitute a trade or business. * * * It is undoubtedly true that where the liquidation of an asset is accompanied by extensive development and sales activity, the mere fact of liquidation will not be considered as precluding the existence of a trade or business. Where, however, the active elements of development and sales activities are absent, the fact of liquidation is not, in our opinion, to be disregarded".

In none of the foregoing cases cited by the plaintiff did the taxpayer, individually or through its agents, actively engage in the advertising and sale of the property to the general public. This factor was abundantly present in the instant case and distinguishes it from the foregoing authorities. In my opinion, the present facts are governed by King v. Commissioner, 5 Cir., 189 F.2d 122, McFaddin v. Commissioner, 5 Cir., 148 F.2d 570, Brown v. Commissioner, 143 F.2d 468, Greene v. Commissioner, 5 Cir., 141 F.2d 645, and Snell v. Commissioner, supra.

336

Judgment will go for the defendant. The foregoing is adopted as findings of fact and conclusions of law.

· Clerk will notify counsel.