GARRETT et al.

v.

UNITED STATES.

No. 49593.

United States Court of Claims.
April 6, 1954.

---

Calvin W. Breit, Norfolk, Va., for plaintiffs.

H. S. Fessenden, Washington, D. C., with whom was H. Brian Holland, Asst. Atty. Gen., for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before PRETTYMAN, Circuit Judge, JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

WHITAKER, Judge.

The plaintiffs sue for a refund of income taxes for a series of years. The major issue is whether the profits from the sales of certain lots, which were a part of the estate of William H. Garrett, deceased, should be treated as capital gains.

William H. Garrett, of Norfolk, Virginia, who died May 13, 1925, owned a large tract of land extending about two miles along the beach of the Atlantic Ocean near Ocean View, Virginia. He also owned rental property in Miami, Florida. Prior to his death Mr. Garrett subdivided this beach property, referred to as East Ocean View, into 3,000 lots. Before his death sales were not frequent, 162 lots having been sold. He, however, maintained an office for the sale of the lots and they were listed on the open market.

By the terms of his will Mr. Garrett left his property to his six children, naming his two sons, Claude B. Garrett and Walter Fay Garrett, and his son-in-law, Elmer Wing, as executors and authorizing them to sell any and all lands and divide the proceeds among his children.

The amount of the proceeds as distributed for the years 1943 to 1946, inclusive, as set out in the fiduciary returns, is shown in finding 3. Amended returns for the years 1943 to 1945 were transmitted to the Collector, but he advised the executors that the so-called "amended returns" were not acceptable. In the amended returns the executors sought to treat the profit from the sale of the lots as capital gains instead of as ordinary income, as they had been treated on the original returns.

The plaintiffs filed, in their respective districts, individual income tax returns for each year as set out in finding 4, reporting the profit from the sale of the lots as ordinary income. Claims for refund were later filed for the years 1943, 1944 and 1945, the dates and amounts being set out in finding 5, on the ground that the profit from the sale of the lots was not ordinary income, but capital gains, and, therefore, that only 50 percent of such income was includable as taxable income under the provisions of section 117 of the Internal Revenue Code, 26 U.S.C. § 117(a) (1).

The Commissioner ruled that because of the method of disposing of the property the gains from the sale of lots was ordinary income from a trade or business, and not transactions which come within the terms of section 117 of the Code.

Thus is presented the principal issue in the case.

The decedent dealt in real estate as a buyer, seller, developer, and builder, and maintained an office for that purpose for about 40 years in the Arcade Building in Norfolk. He bought and sold on his own account rather than as a broker.

Upon the death of William H. Garrett the office in the Arcade Building was continued. William Fay Garrett moved his residence from Miami, Florida, to

Norfolk, Virginia, and thereafter devoted the greater part of his time to the sale of the lots constituting the beach property in question. No advertising was done other than to keep a large map of the property on the wall, which map had been placed there by William H. Garrett prior to his death. Two or three signs were placed on the property. These read "East Ocean View Properties, For Sale, W. Fay Garrett, Arcade Building." The Telephone Directory carried a listing "East Ocean View Company" and "W. F. Garrett" with the same telephone number. The listings were in the ordinary small type of other subscribers. There was no such company. The term was used for the convenience of prospective buyers of the lots of the estate.

Substantially all of W. Fay Garrett's time was devoted to the sale of East Ocean View property and matters connected with the estate. He received a fee of 5 percent as executor of the estate and a 10 percent commission on the price of the lots sold by him for the estate. No real estate agents were employed by the estate, but occasionally a real estate agent would come to Garrett's office with an inquiry from which a sale would result. On these sales a portion of the 10 percent commission would be paid to the agent who brought in the inquiry.

No improvements were made prior to the construction in 1926 of a State highway between Ocean View and Virginia Beach. This highway bisected the Ocean View properties. After this the plaintiffs constructed clay roads within the subdivision, and when the City of Norfolk extended its water mains to the property they paid for extensions of the mains within the property. Plaintiffs also advanced funds to bring electricity to the property, but the advances were later refunded.

Most of the lots were sold on installment contracts, a deed not being made until the price was fully paid. The proceeds were deposited in the bank to the credit of the Estate of William H. Garrett.

No other property was ever purchased by the estate, nor was any investment made by the estate with the funds as they accrued, but the funds were distributed to the heirs under the terms specified in the will.

The office of the estate was not used for any purpose other than the sale of the lots in the East Ocean View properties, except for the sale of some property of W. Fay Garrett. W. Fay Garrett did not contribute to or pay any of the expenses of maintaining the office. The estate is still managed as an estate and the property sold is transferred by deeds signed by the executors.

The estate paid a personal property tax to the City of Norfolk on the furniture and fixtures in the Arcade Building for the years involved, but the State of Virginia has not required the estate to pay a capital tax, although real estate businesses are required to pay such a tax in that state. W. Fay Garrett never owned, nor was he required to own any real estate or business license in the City of Norfolk or the State of Virginia.

Section 117 makes a distinction between property held or disposed of by a taxpayer as capital assets, and property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. The application of the principle depends upon the facts of each case. The distinctions are discussed in Farley v. Commissioner of Internal Revenue, 7 T.C. 198, which held that the disposal of portions of property from time to time did not constitute doing a real estate business, and in Commissioner of Int. Rev. v. Boeing, 9 Cir., 106 F.2d 305, which held that gains or losses from sales of timber under the facts of that case did not fall within the capital gains provision. The application as to varying facts is discussed in United States v. Robinson, 5 Cir., 129 F.2d 297; White v. Commissioner, 5 Cir., 172 F.2d 629; Brown v. Commissioner, 5 Cir., 143 F.2d 468; Storrow v. United States, D.C., 99 F.Supp. 672; Trapp v. United States, D.C., 79 F.Supp. 320, and in numerous other cases.

■ There is no single decisive test as to whether property is held primarily for sale to customers in the ordinary course of a business, but, ordinarily, where property is sold pursuant to the liquidation of an estate, the sale is regarded as a capital transaction. It was said in White v. Commissioner, supra, 172 F.2d at page 630:

"The gist of the court's holding in the Farley case, in which we concur, was that where the liquidation of an asset is accompanied by extensive development and sales activity, the mere fact of liquidation does not preclude the existence of a trade or business; but, where the elements of development and sales activity are absent, the fact of liquidation may not be disregarded."

■ The property was inherited from William H. Garrett who had divided it into lots 20 years before his death. By the terms of his will the proceeds of the sale of lots were to be distributed to the plaintiffs. There was no provision for reinvestment of the funds, and there was no reinvestment. The property was not operated primarily as a development business. Very few improvements were made. No extensive sales or advertising was engaged in. These plaintiffs lived elsewhere and apparently left the disposition largely to W. Fay Garrett. They apparently were content to receive the proceeds of the liquidation of the lots when and if sold. Under all the circumstances and under the decisions the gains from the sale of the lots were not proceeds from the sale of property in the ordinary course of business, but in the process of liquidating the estate, and, therefore, should have been taxed as capital gains.

■ W. Fay Garrett should, of course, return his commissions on the sale of the lots and his executor's fees as ordinary income, but the profit realized from the sale of the lots was not income to him as executor or salesman, but as an heir. His part of the profit from the sale of these lots should be returned as a capital gain.

■ Manifestly, the expenses of the sales should be deducted from the gross receipts before computing the taxable income under section 117. It would be unjust to the Government to treat the proceeds as capital gains and then deduct the full expenses from the taxable one-half.

■ The plaintiff Marguerite Garrett Etheridge may not recover for taxes paid in 1943 since the suit as to that year was filed more than two years after the Commissioner had notified her of the rejection of the claim. See section 3772 (a)(2) of the Internal Revenue Code, 26 U.S.C.A. § 3772(a)(2).

W. Fay Garrett is given judgment for $402.21 for the year 1943, $734.38 for 1944, and $837.33 for 1945. Ruth Houser Garrett is given judgment for $559.89 for the year 1943, $1,264.60 for the year 1944 and $1,139.20 for the year 1945. Marguerite Garrett Etheridge is given judgment for $613.60 and $838.89 for the years 1944 and 1945, respectively. Edna Garrett Wing is given judgment for $772.77 and $813.68 for the years ending April 30, 1944 and April 30, 1945, respectively. Edward N. Mac-Williams and Hazel J. MacWilliams, jointly, are given judgment for $413,29, $598.17, and $426.43 for the years 1943, 1944 and 1945, respectively. Interest in each instance is to be added from the dates of payments as provided by statute. The claim of Willis E. Garrett, as administrator of the estate of Claude B. Garrett, was withdrawn at the time testimony was taken, and his petition is dismissed.

PRETTYMAN, Circuit Judge (sitting by designation), and MADDEN, Judge, concur.

JONES, Chief Judge (dissenting in part).

I agree to the results reached as to all the plaintiffs except W. Fay Garrett, who in the light of all the circumstances should not be permitted to recover.

This may seem a strange distinction, but we feel it is justified. What is one

man's meat may be another man's poison. The whole matter was left to his judgment. He had been in the real estate business in Florida. He moved to Norfolk and took charge of the estate. Since 1926 he has been in charge of the sale of these lots. He has had no other business except an occasional investment of his own. True, he had no real estate license and sold no other property except his own. He did not need to do so. He received a 5 percent commission as executor, and a 10 percent commission on the price of any lots sold.

The husbands of the other plaintiffs are employed in other places and mostly in other states with the exception of Elmer Wing, who is a member of the Pilots Association engaged in full-time maritime work. We realize that according to some of the decisions the business activity of one who is handling a business may be imputed to others who are interested, but the circumstances here are entirely different.

W. Fay Garrett had practically no other business. Why should he? He has been doing well for many years. The other heirs have confidence in him and apparently he has justified their trust.

True, he has paid an income tax on his commissions, but that is inextricably interwoven with his business of the sale of lots; in fact, that is his business. He can do just enough advertising to keep the business going, which is a good business. Evidently the other heirs are satisfied with the increasing value of the properties and with the regular flow of the proceeds.

In defining the term capital assets, which are taxed at one-half the regular rate, section 117(a)(1), which is the applicable provision, is as follows:

"The term 'capital assets' * * does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *."

This provision fits plaintiff W. Fay Garrett's case like a glove. His tax was paid on the disposal of his interest in the estate. He had made that a part, in fact the major part, of his life business. This he had a right to do, but in doing so brought himself squarely within the terms of the quoted part of section 117. For 27 years this has been his principal business. It still is.

We think there is a valid distinction in his position and that of the other heirs.

LITTLETON, J., concurs in the foregoing dissent.