James G. McCONKEY and Claudine
W. McConkey,

v.

The UNITED STATES.

No. 487–53.

United States Court of Claims.

May 3, 1955.

Charles H. Burton, Washington, D. C., Robert Ash, Washington, D. C., on the briefs, for plaintiffs.

Edmund C. Grainger, Jr., Tuckahoe, N. Y., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

The issue presented in this case is whether or not the profits derived from the sale by plaintiffs in the years of 1947 and 1949 of certain lots in the Williamson Groves and Lincoln Court subdivisions are taxable as capital gains, or taxable as ordinary income as gains derived by the taxpayers "in the ordinary course of [their] trade or business."

Capital assets are defined by section 117 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117, as "property held by the taxpayer (whether or not connected with his trade or business), but does not

include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *."

█ If plaintiffs did not hold these lots "primarily for sale to customers in the ordinary course of [their] trade or business," they are taxable on one-half the profits realized therefrom as long-term capital gains, but, if so, they are taxable on the entire income as ordinary income. Garrett v. United States, 128 Ct.Cl. 100; Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; Friend v. Commissioner of Internal Revenue, 10 Cir., 198 F.2d 285; Rubino v. Commissioner of Internal Revenue, 9 Cir., 186 F.2d 304, certiorari denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 615; King v. Commissioner of Internal Revenue, 5 Cir., 189 F.2d 122, certiorari denied 342 U.S. 829, 72 S.Ct. 54, 96 L.Ed. 627; Ehrman v. Commissioner, 9 Cir., 120 F.2d 607; Williamson v. Commissioner, 4 Cir., 201 F.2d 564; Trapp v. United States, D.C.W.D.Okl., 73 F.Supp. 385, Id., D.C.W.D.Okl., 79 F. Supp. 320, affirmed 10 Cir., 177 F.2d 1, certiorari denied 339 U.S. 913, 70 S.Ct. 573, 94 L.Ed. 1339; Farley v. Commissioner, 7 T.C. 198.

██ No one factor, obviously, is determinative of whether or not property is held primarily for sale to customers in the ordinary course of one's trade or business. But, among the factors regarded by the courts as important are the activities of the taxpayer, or his agents, in promoting sales, the extent of the development and improvement of the property, the purpose for which the property was acquired, and the frequency and continuity of sales. Victory Housing No. 2 v. Commissioner, 10 Cir., 205 F.2d 371; Friend v. Commissioner, supra; Home Co. v. Commissioner, 10 Cir., 212 F.2d 637; Mauldin v. Commissioner, 16 T.C. 698, affirmed 10 Cir., 195 F.2d 714; Galena Oaks Corp. v. Scofield, D.C.S.D.Tex., 116 F.Supp. 333; Shearer v. Smyth, D.C. N.D.Cal., 116 F.Supp. 230; Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781; Rollingwood Corp. v. Commissioner, 9

Cir., 190 F.2d 263; Trapp v. United States, supra. Where the sales are made pursuant to liquidation of property received by bequest or devise, the taxpayer ordinarily is entitled to treat the sales as the sales of capital assets.

Plaintiffs filed no exceptions to the Commissioner's excellent report, and defendant's exceptions are minor. We concur in the Commissioner's findings and have adopted them as the findings of the court. These facts show, we think, that plaintiffs did not hold this property "primarily for sale to customers in the ordinary course of [their] trade or business."

Plaintiffs are husband and wife. Mrs. Claudine W. McConkey is the daughter of Mrs. Nannie C. Williamson. Mrs. Williamson owned the Williamson Farm just north of the city of Roanoke, Virginia. On May 1, 1923 she sold about 180 acres of this farm to the Williamson Groves Corporation, retaining 27 acres for herself. The Williamson Groves Corporation paid the purchase price partly in cash and partly in notes, secured by a first mortgage on the land sold. The Corporation divided the property into two subdivisions, one for white people, and one for negro people. The white subdivision was known as Williamson Groves, and the negro subdivision as Lincoln Court.

Neither Mrs. Williamson nor any of her relatives were stockholders, directors or officers of the Williamson Groves Corporation.

Mrs. Williamson died on January 6, 1926, leaving as her heirs at law her two daughters, the plaintiff Claudine W. McConkey, and Lucy C. Lukens. Mrs. Lukens died 30 hours after her mother's death.

The plaintiff Claudine W. McConkey and plaintiff James G. McConkey were married on December 11, 1930. Each of them is now in excess of 65 years of age. Prior to their marriage plaintiff, James G. McConkey, had retired from all business activity, on account of his health. Mrs. McConkey had never been in business.

By 1938 the Williamson Groves Corporation had fallen a year or two behind in its interest payments and the holders of their notes decided that it would be necessary to foreclose the mortgage. In addition to the notes owned by plaintiffs, there were outstanding $7,500 of these notes in the hands of the estate of Charles T. Lukens, Mrs. McConkey's brother-in-law, and $12,500 in the hands of the First National Exchange Bank of Roanoke. The parties concluded that it would be to the interest of all concerned for all of the outstanding notes to be in the hands of one party, so that, if the property had to be bought in at the foreclosure sale, it could be bought in by one party instead of by several. Accordingly, the McConkeys exchanged certain securities received by Claudine W. McConkey from her mother's estate for the notes of the Williamson Groves Corporation held by the Lukens Estate and the First National Exchange Bank. This gave the McConkeys a total of $62,000 of these notes.

At the foreclosure sale, James G. McConkey bought in the property on his own behalf and on behalf of his wife for the sum of $35,000. They thus acquired title to approximately 363 lots in the Williamson Groves subdivision, and 341 lots in the Lincoln Court subdivision.

It thus appears that the lots, the profit on the sale of which is in question, had been acquired by plaintiffs by foreclosure of the mortgage securing the notes which plaintiff Claudine W. McConkey received from the estate of her mother. For the purposes of this case, therefore, these lots are to be treated as having been received by plaintiffs from the estate of Mrs. McConkey's mother. In Garrett v. United States, 128 Ct.Cl. 100, we held that the profit on the sales made by the Garretts in the process of a liquidation of the estate, of which they were devisees, was taxable as capital gain. There was a dissenting opinion in this case, but that concerned only the plaintiff who was actively engaged in handling the sales transactions. The court was unanimously of the opinion that the other devisees were entitled to treat the property sold as capital assets. The sales of the property here in question were made in the process of the liquidation of the estate of the mother of plaintiff Claudine W. McConkey.

After the acquisition of this property, the McConkeys did practically nothing to dispose of the lots. From 1938, when they acquired the property, until 1949, a period of a little over 10 years, the extent of their activities toward promoting a sale of these lots was as follows:

The "for sale" sign which the Williamson Groves Corporation had erected on the Williamson Groves subdivision was repainted by Mr. McConkey in 1938.

He erected a "for sale" sign on the Lincoln Court subdivision. Both of these signs merely stated that the lots were for sale, and gave his name and telephone number.

On March 11, 12, 14, 15, 18, 19, 26, and April 2, all in 1939, and on March 10, 1940, a small advertisement appeared in the classified section of the Roanoke Times, and similar advertisements appeared in the Roanoke World-News on March 10, 11, 13, 14, 17 and 18, 1939. The total cost of all of this advertising was between $9 and $10. Plaintiffs have done no newspaper advertising since 1940.

Plaintiffs sold one of the lots in the Lincoln Court to a colored preacher. At his request, a small advertisement of the lots was carried in his church paper at a cost of between $15 and $20. No advertisement has appeared in that paper since 1945.

No improvements whatever were made on the property by plaintiffs; they opened no streets, they ran no sewers or water lines, or made any other improvements whatsoever.

Except for the "for sale" signs and the little advertising done in 1939 and 1940, plaintiffs did nothing whatever to promote the sale of these lots. They merely sat back and let purchasers come to them.

When a real estate agent secured a prospect for the sale of one of these lots, he would go to plaintiff, Mr. McConkey, and find out the price of it, and if the price was acceptable, a deed would be

executed by Mr. McConkey and his wife on a form which Mr. McConkey had had prepared by a lawyer some time back in 1938. From the time plaintiffs acquired the property in 1938 through 1949, inclusive, the plaintiffs have not maintained an office or place of business.

From 1938 through 1946, plaintiffs sold an average of between 15 and 16 lots a year.

By 1947 the town of Roanoke had begun to expand northwardly and the lots in these subdivisions became more in demand, so that in the year 1947 plaintiffs sold 88 lots, 19 in 1948, but around 185 or 190 in 1949. Of these, however, 131 were sold to one person, for the purpose set out in the next paragraph. The increase in these sales, however, was due in no way to the activities of plaintiffs, or their agents, but was due solely to the expansion of the city in their direction.

In 1949 a real estate agent purchased from plaintiffs 131 lots, built some houses on some of them, cleaned them up, and then offered about 100 of them at an auction sale. Plaintiffs had some lots adjacent to those to be offered for sale at auction, and the real estate agent came to Mr. McConkey and requested permission to sell these adjacent lots also. This permission was granted, but all activities in connection with the auction were carried out by the real estate agent. Plaintiffs did not participate in the auction or bear any portion of the expense incident thereto. At the auction, 11 of plaintiffs' lots were sold, on which they paid the real estate agent the usual commission paid on private sales.

At no time from 1938 to 1949 did plaintiffs buy or sell real estate for others, and the only real esate they ever purchased for themselves were 4 lots in the Williamson Groves subdivision as a protection to their home property.

It would be difficult to conceive of a case where sales were made with less activity on the part of the seller. They merely sat in their home and sold such lots as unsolicited buyers might wish to buy.

Plaintiffs carried on no other business. They lived on the income from the property which had been received from the estate of Mrs. McConkey's mother.

We are of the opinion that these lots were not sold by plaintiffs in the ordinary course of their trade or business and that they are entitled to treat them as the sale of capital assets.

It is stipulated that upon the basis of so treating these sales, plaintiffs have overpaid their income taxes for the year 1947 in the amount of $11,241.74, and for 1949 in the amount of $9,076.44.

Judgment will be entered against the defendant in plaintiffs' favor in the sum of $20,318.18, and interest as provided by law.

JONES, Chief Judge, and LARAMORE, MADDEN, and LITTLETON, Judges, concur.