**Milton S. YUNKER and Leonna S. Yunker (Husband and Wife), Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 13032.

United States Court of Appeals
Sixth Circuit.

May 1, 1958.

Louis E. Ackerson, Louisville, Ky., for petitioners.

Harry Marselli, Washington, D. C., for respondent. Charles K. Rice, Lee A. Jackson, Harry Baum and Walter Akerman, Jr., Washington, D. C., on the brief.

Before ALLEN, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

Leonna S. Yunker, the wife of Milton S. Yunker, inherited 75 acres of undeveloped farm land, in various parcels, from her grandfather, in 1928, and from her uncle, in 1935. Part of the land adjoined the Dixie Highway, known as US 31. Mrs. Yunker wanted to sell the acreage as a whole, and the real estate broker whom she employed, Mr. Carpenter, attempted such a sale. Considerable effort resulted only in offers that were entirely inadequate. Mrs. Yunker and Mr. Carpenter then concluded that it was not feasible to sell the property as a whole and that it would be salable only by subdividing it into sections of approximately five acres each. One of the sections was divided into three considerably smaller portions. Thereafter, a road was laid out and constructed, giving each parcel access thereto; and a power line was extended along the road to make electricity available to each parcel. Mr. Car-

penter paid for the survey, engineering, and construction of the road under an agreement with Mrs. Yunker that he would be repaid out of the proceeds of each sale; and he was subsequently repaid the sums he had advanced. Mr. Carpenter was further employed by Mrs. Yunker as her agent to handle the sales of the various parcels, on a commission basis. Twelve sales were completed in 1950, and five sales, in 1951.

Mr. and Mrs. Yunker filed joint income tax returns and reported the gain from the sale of the above mentioned lots, as capital gain under Section 117(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(a) (1) (A). The Commissioner, however, determined deficiencies. Thereafter, the Tax Court held that the disposition of the parcels of real estate constituted the carrying on of a trade or business, and that Mrs. Yunker held the parcels primarily for sales to customers in the ordinary course of her trade or business, with the result that the property could not be treated as a capital asset. The Tax Court further decided that the transaction came within the exception set forth in Section 117(a) (1) (A),[1] and within the meaning of Section 117(j), and thereupon determined that the gains from the sales of the real estate were taxable as ordinary income.

The sole issue presented is whether the net gain realized by the taxpayer, Leonna S. Yunker, from the above mentioned sales of the lots constituted ordinary, income, or whether it constituted gain from the sale of capital assets, taxable at long term capital gain rates.

■ Capital assets do not include property primarily for sale to customers in the ordinary course of carrying on a trade or business; but if the sale of

the lots by the taxpayer in this case did not constitute sales to customers in the ordinary course of carrying on her trade or business, she is entitled to be taxed on the gain as upon sales of capital assets.

The taxpayer was interested only in one purpose—selling the batch of real estate which she had inherited—getting rid of it, and getting some profit out of it. She had never been in the real estate business and had never been interested in it. When she proceeded to sell the real estate, she was not interested in building a road or even in disposing of it in smaller parcels. The unquestioned evidence is that she was most anxious to sell the whole tract. In fact, she was reluctant to subdivide it. But she found that the old farm was unsalable, in one tract. Mr. Carpenter, who eventually assisted in the sale of the tract in smaller parcels, testified that it was "pretty unsalable" as a whole. He testified further that he had advertised the tract for sale as a whole, but that they were unable to sell it on that basis. It was Mr. Carpenter who told Mrs. Yunker that it could only be sold in smaller parcels, and it was he who put up the money for surveying, subdividing, engineering of the road to give access to the various parcels, and carried on the negotiations to secure and provide electricity and water service to the different lots, on the agreement with the taxpayer that he would receive back his financial advances from the first monies received on the sales. What Mr. Carpenter put up in the way of money was said to be "in the nature of a loan." But the taxpayer never borrowed anything. What Mr. Carpenter had for his advances was rather in the nature of a lien on the proceeds of the sales that he hoped would result from

---

1. The Internal Revenue Code of 1939 provides:

"§ 117. Capital Gains and Losses. (a) Definitions—As used in this chapter—

"(1) Capital Assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

his efforts. But that matter is not important.

In the argument of this case, a forceful argument was made as to the sanctity of findings of fact and the wrongful usurpation by an appellate court of the role of the fact finder, which, it was suggested, at least implicitly, by appellee, would be the only way by which the taxpayer could here prevail. However, as Mr. Justice Frankfurter has said, "The conclusiveness of a 'finding of fact' depends on the nature of the materials on which the finding is based. The finding even of a so-called 'subsidiary fact' may be a more or less difficult process varying according to the simplicity or subtlety of the type of 'fact' in controversy. Finding so-called ultimate 'facts' more clearly implies the application of standards of law. And so the 'findings of fact' even if made by two courts may go beyond the determination that should not be set aside here. Though labeled 'finding of fact', it may involve the very basis on which judgment of fallible evidence is to be made. Thus, the conclusion that may appropriately be drawn from the whole mass of evidence is not always the ascertainment of the kind of 'fact' that precludes consideration by this Court." Baumgartner v. United States, 322 U.S. 665, 670, 671, 64 S.Ct. 1240, 1243, 88 L.Ed. 1525.

▮ In a case where the evidence is, in all essentials, undisputed, an appellate court may exercise its independent judgment with respect to the ultimate fact question, when it could not do so in a case wherein contradictory evidence appears. Smith v. Dunn, 5 Cir., 224 F.2d 356. "In so far, however, as the so-called 'ultimate fact' is simply the result reached by processes of legal reasoning from, or the interpretation of the legal significance of, the evidentiary fact, it is 'subject to review free of the restraining impact of the so-called "clearly erroneous" rules.' Lehmann v. Acheson, 3 Cir., 206 F.2d 592, 594." Galena Oaks Corporation v. Scofield, 5 Cir., 218 F.2d 217, 219. A similar problem was dealt with in E. H. Sheldon & Co. v. Commissioner,

6 Cir., 214 F.2d 655, 658, where the taxpayer had appealed from an order of the Tax Court sustaining the disallowance by the Commissioner of certain deductions from gross income, and it was said:

"As a preliminary matter, we dispose of the Commissioner's contention that the finding of the Tax Court that such expenditures were not ordinary and necessary expenses of carrying on the business during the years in question but were capital expenditures is not clearly erroneous and is conclusive under Sec. 1141(a), Internal Revenue Code, 26 U.S.C.A., § 1141(a) and Rule 52(a) Rules of Civil Procedure, 28 U.S. C.A. The subsidiary facts in this case are uncontradicted, and such facts, so found by the Tax Court, are accepted by us under Rule 52(a). However, the findings of the Tax Court, which are now relied upon by the commissioner, are conclusions drawn by the Tax Court from uncontradicted subsidiary facts, the drawing of which did not involve any element of seeing or hearing the witnesses or of judging their credibility. As we have heretofore pointed out, under such circumstances, this Court will make its own evaluation of the conclusions to be drawn from the facts established by the evidence."

▮ In this case, since the evidentiary facts are not in dispute, the reviewing court is not bound by the findings of ultimate fact below. With respect to the interpretation of the statute, the words and phrases, "trade or business," "ordinary" and "customers" are to be construed in their ordinary and not in an artificially created meaning. Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783. To be engaged in the real estate business means to be engaged in that business "in the sense that term usually implies." Dillon v. Commissioner, 8 Cir., 213 F.2d 218, 220. In Goldberg v. Commissioner, 5 Cir., 223 F.2d 709, 712, 713, the court reversed the holding of the Tax Court that cer-

tain gain was "ordinary income" rather than capital gain. In that case, the court said that "The test as to whether the capital gains provisions apply in such event is, at bottom, whether the purpose of the sales is primarily making money by carrying on a substantial part of the activities of the person engaged in the business of selling houses, or to dispose of or liquidate the rental business. If the latter is the case, the owner obtains capital gains benefits."

■ The Tax Court, in its opinion in the instant case, stated that it recognized that no one test is controlling in ascertaining whether the sales are of property held primarily by the taxpayer for sale to customers in the ordinary course of his trade or business, and that the question must be decided upon consideration of all material facts and circumstances of each individual case. The Tax Court further observed that the fact that the property was subdivided into parcels of five acres or more, rather than into smaller parcels or lots, was not decisive. But it held there was an element of failure of proof on the part of the taxpayer in that Mrs. Yunker did not show that Mr. Carpenter, who was her agent, did not make offers of the property to prospective buyers; or did not advertise the property for sale; or did not let it be known that it was for sale; and that Mrs. Yunker did not prove "that her subdivision was made only to meet the requirements of a selected group of buyers pursuant to their request, and to an agreement with them." We do not consider this a failure of proof on the part of Mrs. Yunker. Moreover, the Tax Court held that "Upon consideration of all of the evidence, we are unable to conclude that the sales of the property in question were casual and isolated sales, and that there was the regularity and continuity of sales which ordinarily constitute the carrying on of a business." We do not concur in the view that where the owner's sole purpose is to dispose of an inherited tract of land, he is obliged to sell it only in casual or isolated sales, in order to come within the capital gains

provisions. In Goldberg v. Commissioner, supra, in reversing the Tax Court's "ordinary income" determination, the Court of Appeals said: "The sales were frequent and continuous; but since the circumstances were favorable to selling to individuals and the project was a large one, this is entirely consistent with the liquidation of it as an investment." Disposing of a tract of land by a series of sales, in smaller parcels, by an owner who is not in the real estate business, is not the disposition of property primarily held by such owner "for sale to customers in the ordinary course of his trade or business," as a real estate dealer. Smith v. Dunn, 5 Cir., 224 F.2d 353, 358; Chandler v. United States, 7 Cir., 226 F.2d 403. Where a taxpayer liquidates his real estate holdings in an orderly and businesslike manner, he is not by that circumstance held to have entered into the conduct of a business. "These facts are consistent only with the desire and attempt to get rid of capital assets which no longer furnished income. Petitioner bought no additional property. * * * Such liquidation cannot be forced over night, especially where the land is of the character involved here. We think all of the activities embraced in the findings of fact disclose nothing more than activities incidental to an ordinary liquidation. * * * " Three States Lumber Company v. Commissioner, 7 Cir., 158 F.2d 61, 64.

Ordinarily when property is sold pursuant to the liquidation of an estate, the sale is regarded as a capital transaction. Garrett v. United States, 120 F.Supp. 193, 128 Ct.Cl. 100. In Daniel W. Ellis, 13 T.C.M., a capital gains result was arrived at in spite of extensive activities on the part of the taxpayer, who had subdivided forty-four acres of land, which he had inherited, into seventy-two lots suitable for home building; had hired an engineering firm to survey and establish lot lines; carried out extensive activities to place the lots in condition for residential use; hired an agent to supervise the details of the subdivision and to handle the sale of the lots; and advertised that

the lots were for sale, resulting in the sale of sixty-nine lots during a period of three years.

In Mackall v. United States, D.C.E.D. Va.1957, 162 F.Supp. 522, the taxpayers had inherited a tract of unimproved land and decided to dispose of it by selling it as a whole; but this effort proved unsuccessful. Thereafter, acting upon the advice of a real estate agent to whom they had entrusted the selling of the property, it was subdivided and sold as building lots. Judge Paul, in reversing the Commissioner's determination that the gain realized was ordinary income, said that the taxpayers were not in the real estate business; that they never purchased or otherwise acquired any other property for sale; that they were only trying to dispose of property in such a manner and under such circumstances as was more advantageous to them; that they had the right to do so under conditions that would realize the greatest financial benefit; that they were not obliged to sell it at once or as a whole, but could expend money to enhance its value and make it more attractive to potential purchasers; and that such manner of disposition did not in itself change the nature of the property from a "capital asset" to something else. "It is only," said the court, "when property is held primarily for sale in the ordinary course of the taxpayer's business that it loses its character as a capital asset." The court thereupon held that the proceeds from the sale of the lots were taxable as capital gains. In Potter v. United States, D.C.N.D.Ga.1957, 162 F.Supp. 591, the court held that an individual who employed a broker to subdivide an inherited tract of land, selling one-half through the broker, and, nine years later, selling the remainder in one sale, was not engaged in the business of selling real estate, and that the proceeds were taxable as capital gains. In Berberovich v. Meninger, D.C.Mich.1957, 147 F.Supp. 890, Judge Picard, in a case involving disposal, by a physician, of his one hundred and sixty acre dairy farm by subdivision, and sale of building lots, held

that there were no indicia that the physician thereby became engaged in the real estate business, and that he held the lots primarily for sale to customers in the ordinary course of his trade or business. In Martin v. Campbell, D.C.N.D. Tex., decided March 9, 1955, when a taxpayer had received real property by will from her mother, and had her husband subdivide it into lots, installing streets and other improvements, Judge Atwell, one of the most experienced members of the federal judiciary, held, as a matter of law, that profits realized from such sales were capital gains. See also, to the same effect, Green v. United States, (D.C.Colo., decided March 22, 1956), and McConkey v. United States, 1955, 130 F. Supp. 621, 131 Ct.Cl. 690. In the latest case to come to our attention, Scott v. McCrory, D.C.Neb.1957, 162 F.Supp. 535, it was held that a real estate dealer, who inherits land, and who sells it in various tracts, is not, by virtue of his being in the real estate business, thereby precluded from capital gains treatment. In deciding the case, the court said that there was no logical reason why one cannot be engaged in the task of disposing of property owned by himself, and, at the same time, not be considered to have held it for sale to customers in the ordinary course of his business. The fact that one who is a realtor inherits real estate does not affect the essential character of his activities with relation to the land which he inherited; and if "those activities are found primarily to be liquidating in nature, the transactions insofar as the heirs are concerned are capital, and his status as one is not thereby jeopardized. Hence he is entitled to the preferential treatment provided under Section 117. We so hold."

While no one test is controlling in ascertaining whether, under the statute, the sales are of property held primarily by the taxpayer for sale to customers in the ordinary course of his trade or business, it appears clear in this case that there are no indicia whatever that the taxpayer became engaged in the real estate business, or that she held the

lots primarily for sale to her customers in the ordinary course of her business. The sales were transactions in liquidation of inherited property. These were capital assets of the taxpayer, and profits thereby resulting were capital gains.

While some courts differ in their conclusions in resolving the problem posed in this case, it would not, in our opinion, be helpful or illuminating to discuss or criticize such adjudications.

In sum, then, Mrs. Yunker, who was not a real estate dealer, or interested in the real estate business, inherited a batch of farm land. She was interested only in disposing of it at some profit. She never bought any additional real estate. She was unable to sell the land in one tract and could not sell it at a profit except through its subdivision by a real estate dealer, and only then, by his assuming all the expenses of surveying and constructing a road, for which he was to be repaid out of the first monies received from the sale of the lots. It seems unreasonable to say that the sales so made were sales of property held by Mrs. Yunker "primarily for sale to customers in the ordinary course of [her] trade or business." For Mrs. Yunker was a married woman, living with her husband, who was a petroleum engineer. Neither of them was interested, in fact, they were opposed, to going into any such trade or business as that of a real estate dealer, and, consequently, neither was engaged in selling the lots in the ordinary course of business.

If petitioner had sold the entire tract at a profit, in one transaction, it is unquestioned that she would be entitled to capital gains treatment. It was impossible for her to sell the entire tract at one time at a profit. To hold that she would not be entitled to capital gains treatment, when she would otherwise be entitled to it, merely because she selected the only possible method of selling her property at a profit, by installing improvements and selling in smaller parcels, would seem to be an injustice resulting from a forced and artificial construction of the statute, which, in our view, could not have been intended by Congress.

 It is our conclusion, therefore, that where a person desires to dispose of inherited land, and finds that he can do so advantageously only by having it sold in smaller parcels through a real estate dealer, who, to make the property salable, builds a road to give access to it, he may not be denied the right to capital gains treatment by a forced construction of the statute to the effect that the land in question was held by the heir primarily for sale to customers in the ordinary course of his trade or business.

In accordance with the foregoing, the decision of the Tax Court is reversed, and the case remanded for further proceedings consonant with this opinion.

Judge SHACKELFORD MILLER concurs in the result.