Madden, Judge,
delivered the opinion of the court:
The plaintiff sues to' recover a part of the income taxes which she was required to pay for the year 1947. She claims that she incurred a loss in the sale of certain property in that year, and that the Government did not permit her to take as large a deduction as she was entitled to for the loss.
The property in question was a one-fourth undivided interest in 180 shares of stock in a corporation which owned an apartment building which it operated on a cooperative basis. Under this system of operation, the owner of an adequate number of shares in the corporation was entitled to a lease of a designated apartment, at a yearly rental of one dollar, so long as he continued to be the owner of the shares. The expense of operating the apartment was assessed against the tenants in proportion to the size of their apartments.
The plaintiff acquired a one-sixth interest in the stock and the accompanying lease by devise from her father who died in 1932, and an additional one-twelfth interest from another source at about the same time, she thus having, from the two sources, a one-fourth interest. This interest was subject, however, to an outstanding life estate in the plaintiff’s aunt, the widow of Benjamin Aycrigg who had been, so far as the plaintiff’s family connections were concerned, the original owner of the stock and the lease. The aunt who was the life tenant died in 1946 and then for the first time the plaintiff’s interest became a present interest.
The plaintiff never had any intention of occupying the apartment and could not, of course, have done so except by arrangement with the other owners of undivided interests. The stock and the accompanying lease were sold in 1947 by the plaintiff and the other owners to a purchaser satisfactory *310 to the corporation which owned the apartment house. The plaintiff received as her one-fourth share of the sales price $2,881.44. She claims that her basis for the property was $5,000 plus $132.23 of sales expense, and that her loss was, therefore, $2,250.79.
Section 113 (a) (5) of the Internal Eevenue Code of 1939, 26 U. S. C. 1952 ed. 113, provides that when property is acquired by bequest, devise or inheritance the basis shall be the fair market value of the property at the time of such acquisition. Treasury Eegulations 111, promulgated under the Internal Eevenue Code of 1939, provide in section 29.113 (a) (5)-l (c) that the value of property at the death of the decedent as appraised for the Federal estate tax “shall be deemed to be its fair market value at the date of acquisition.”
When the plaintiff’s father died in 1932 he owned a one-third interest in the property in question. That one-third interest was appraised, for estate tax purposes, at $3,000. He devised one-half of his one-third interest, i. e., a one-sixth interest, to the plaintiff. Its value, then, would have been $1,500. As we have said, at about the same time she inherited another one-twelfth interest. Its value would have been $750, making a total value of $2,250 for the plaintiff’s interest. If we add the $132.23 of sales expense we get a basis for the property in the hands of the plaintiff of $2,382.83. Since she received $2,881.44 for the property, she did not incur a loss. The Government allowed her a loss deduction of $968.74. She has no cause to complain.
As we have said, the plaintiff claims a basis of $5,000, plus the $132.23 sales expense. The $5,000 figure is taken by the plaintiff from the appraisal of $20,000 which was made of the entire interest in the shares and lease when the plaintiff’s uncle, Ben j amin Aycrigg, died in 1925. That valuation is irrelevant, because the plaintiff did not acquire the property from her uncle Benjamin. Benjamin devised the property, subject to a life estate in his widow, to his brothers and sisters “living at my death.” The plaintiff’s father was a brother of Benjamin living at Benjamin’s death, hence the further provision in Benjamin’s will giving a share to issue of' brothers and sisters who predeceased Benjamin gave nothing to the plaintiff. She acquired the property from her *311 father, and the appraisal for the purposes of his estate tax is the relevant appraisal.
What we have said disposes of the case. The parties have, however, discussed at length the question whether, if there was a loss, it was a fully deductible loss, or a capital loss, deductible only to a limited extent. We shall comment briefly on that question.
Section 23 (e) of the Internal Revenue Code of 1939 provides for the deduction from net income of losses incurred by the taxpayer. Section 23 (g) says that losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. Section 117 (a), 26 U. S. C. (1946 ed) § 117, provides:
(1) Capital assets. — The term “capital assets” means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or real property used in his trade or business; * * *.
The plaintiff claims that the property in question fell within the language “property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1).” The plaintiff says that this property was subject to allowance for depreciation because it was a lease. The principal property was the stock in the corporation, the ownership of which stock was a prerequisite to the getting or keeping of a lease on an apartment. Shares of stock in a corporation are not a depreciable asset. As to the lease itself, we assume that it could be segregated from the stock, and that it was a depreciable asset. We pass the question whether the plaintiff, in fact, ever held the property for rental, and consider the question whether one who owns and rents property, and ultimately sells it at a profit or a loss, is disposing of a capital asset. The statute, quoted above, says that he is not disposing of a *312 capital asset if the property is “property, used in his trade or business, of a character which is subject to the allowance for depreciation”, etc.
The test would seem to be whether the property is used in the taxpayer’s trade or business. If one’s trade or business is that of keeping store, or operating a bank, and he owns and rents out a house, the renting of the house and the collection of the rent, though he engages in them for profit, are not his trade or business, any more than the buying and selling of corporate shares are his trade or business, when in fact his trade or business is something else.
The plaintiff, fairly enough, cites certain decisions of the Tax Court of the United States which support her contention. See Fackler v. Commissioner, 45 B. T. A. 708; Crawford v. Commissioner, 16 T. C. 678; Hazard v. Commissioner, 7 T. C. 372, among others. The United States Court of Appeals for the Sixth Circuit affirmed the Fachler decision, 133 F. 2d 509, but only after looking carefully at the extent of the taxpayer’s activities, through agents, in the care and management of the rented property, which was a business building. With due respect for the Tax Court, we think that whether a taxpayer’s renting of property is Ms trade or business is a question of fact, just as whether the sale of lots is in the ordinary course of his trade or business, is a question of fact.
Stated differently, the question is whether the taxpayers’ activities, personally or through agents, in connection with the property, are so extensive as to rise to the stature of his trade or business. See Garrett v. United States, 128 C. Cls. 100; McConkey v. United States, 131 C. Cls. 690; Gordon v. United States, 141 C. Cls. 883.
The plaintiff’s petition will be dismissed.
It is so ordered.
McLattghliN, District Judge, sitting by designation; Whitaker, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court makes findings of fact, based upon the stipulation of the parties, and the briefs and argument of counsel, as follows:
*313 1. Plaintiff is a citizen of tbe United States, residing in the Village of Eidgewood, New Jersey.
2. Benjamin Arthur Aycrigg was plaintiff’s uncle and the owner of 180 shares of the capital stock, no par value, of 1158 Fifth Avenue, Incorporated.
3. 1158 Fifth Avenue, Incorporated, a New York Corporation, was and is the owner in fee simple of a fifteen story apartment house known as No. 1158 Fifth Avenue in the city of New York.
4. Benjamin Arthur Aycrigg entered into a lease indenture with 1158 Fifth Avenue, Incorporated, whereby the latter leased to him the apartment known and designated as Apartment D on the 12th floor of said apartment house, consisting of seven rooms. The yearly rent was one dollar ($1.00).
The lease provided, inter alia (at p. 2),
The Lessee is entitled, so long as he shall continue to be the owner and holder of the (180) shares, to a proprietary lease of said apartment in accordance with and subject to the covenants, terms, provisions, and conditions hereinafter set forth.
(at p. 3),
Provided always, however, and this lease, is made, executed and delivered upon the express condition, that the same shall cease, determine and become null and void, at the option of the Lessor, upon the happening of any of the following events;
(a) In the event that the Lessee shall cease to be the owner of, and to have standing in his name on the books of the Lessor, a number of shares of the capital stock of the Lessor at least equal to the number of shares owned and held by him, as above specified, upon the execution and delivery of this lease; Provided, however, that in case the Lessee shall die during the term of this lease, the foregoing provisions as to the ownership of such shares shall be suspended for a period of fifteen months after the death of the Lessee, during which period the personal representatives of the Lessee, or the person or persons to whom the interest of the Lessee in such shares shall have passed by operation of law or by virtue of a valid will, shall have the right to transfer such shares to some one person to whom the Board of Directors of the Lessor shall have declared, by resolution duly adopted, such shares may be transferred and this *314 lease may be assigned, or in case the interest of the Lessee in such shares shall have passed by operation of law or by virtue of a valid will to some one person, such person shall have the right to transfer such shares into his own name, but only, however, if the Board of Directors of the Lessor shall have declared, by resolution duly adopted, that such shares may be transferred into his name and that this lease may be assigned to him.
(atp. 7),
That the Lessee shall not during the term hereby granted use or occupy the demised premises or permit the same or any part thereof to be used or occupied, for any purpose other than as a private dwelling for the Lessee and his immediate family, and that he shall not conduct or carry on or permit to be carried on in the demised premises any profession, trade, business, or manufacturing whatsoever, * * *.
5. Benjamin Arthur Aycrigg died on June 24,1925. The 180 shares of stock in 1158 Fifth Avenue, Incorporated, and the lease of Apartment D were among the assets included in his gross estate for federal estate tax purposes, were part of the residue of his probate estate, and were reported in his estate tax return at a valuation of $20,000. Upon audit, the examining agent determined that the fair market value of the stock and lease at the date of Benjamin Arthur Aycrigg’s death was $24,125.00.
6. Benjamin Arthur Aycrigg’s last will and testament provided in material part as follows:
Second : I give, devise and bequeath all the rest residue and remainder of my property and estate both real and personal of whatsoever kind and wheresoever situated of or to which I may die seized, possessed or entitled to the Executor of this my Will, upon trust nevertheless to invest and reinvest and to keep invested the same and to receive and collect the income thereof and to apply the net income realized therefrom to the use of my wife, Florence Young Aycrigg, during the term of her natural life.
Third: Subject to the trust estate created for the benefit of my said wife by the preceding clause of this will I give, devise and bequeath the principal or capital of my said residuary property to my lawful issue living at my death per stirpes absolutely and in fee, or should I have no such issue then and in that event I give, devise *315 and bequeath all my said property and estate to my brothers and sisters living at my death and to the then lawful issue (taking per stirpes) of any of my brothers and sister who shall have died before me.
7. Benjamin Arthur Aycrigg had no children or issue. He was survived by two brothers, John B. Aycrigg, and William A. Aycrigg, a sister, Kate Aycrigg, and his widow, Florence Young Aycrigg.
The Manufacturers Trust Company of New York City has acted as trustee under the will of Benjamin Arthur Aycrigg, and has administered his property pursuant to the provisions of his will.
8. John B. Aycrigg was also plaintiff’s father. He died on January 25, 1932. By his last will and testament, he devised one-half of the residue of his probate estate to plaintiff, “absolutely and in fee”, subject to a life estate in his widow.
Included among the assets of his gross estate on a supplemental estate tax return and as part of the residue of his probate estate were % (one-third) of
180 shs. 1158 Fifth Avenue, Inc., together with lease for 99 years from Oct. 23,1924 of Apt. “D” on the 12th floor of 1158 Fifth Avenue, New York City (Valuation made by E. J. Aesenbrey, Vice-President of Douglas Gibbons & Co., agents for the building).
valued at $3,000.
Plaintiff acquired a %th remainder interest in the 180 shares of 1158 Fifth Avenue, Inc. and the lease of apartment 12 D under the will of her father, John B. Aycrigg. She was also one of three executors of her father’s estate. A short time thereafter, by a subsequent inheritance from her aunt, Kate Aycrigg, plaintiff’s remainder interest in the 180 shares of stock and lease of Apartment 12 D was increased to a % interest.
9. Florence Young Aycrigg, the widow of Benjamin Arthur Aycrigg, died on December 16,1946. She occupied Apartment 12 D as a residence until the time of her death. Thereafter, a companion of Florence Young Aycrigg, who had lived there with her, was allowed to continue to occupy Apartment 12 D until April of 1947. Apartment 12 D has *316 never been occupied as a residence by plaintiff or by any of her co-owners.
10. On December 20, 1946, plaintiff’s husband wrote the Rent Control Office, 350 Fifth Avenue, New York City, requesting blanks for registration for rent of the apartment and requesting also to be notified of how long it would take to fix the maximum rent. No answer was ever received to this letter.
11. In January, 1947, Apartment 12 D was listed with Douglas, Gibbons & Co., Inc. of New York City, real estate agents. The lease and the shares of stock were sold, through the office of Douglas, Gibbons & Co., Inc., in April, 1947, to Captain Roger Williams, United States Navy. Plaintiff’s share of the sales proceeds, or %th, was $2,881.44.
12. In the year 1947, the only rental income received by plaintiff was $20,733.76 from R. H. Macy Co. of New York, as ground rent for sundry parcels of land occupied by it on 34th and 35th Streets in New York City as a department store, the said land being owned by plaintiff’s family for several generations.
13. In her separate income tax return for the year 1947, attached hereto as Exhibit E, plaintiff reported the amount of $2,250.79 as an ordinary and fully deductible loss on the sale of the co-operative apartment located at 1158 Fifth Avenue, New York City, computed by subtracting the gross sales price, $2,881.44, from $5,132.23. The latter sum was arrived at by adding $132.23 as the expense of sale to a basis of $5,000. Plaintiff also reported long-term capital losses of $31.26 on sales of stock in corporations other than 1158 Fifth Avenue, Incorporated. The basis of $5,000 was computed by taking %th of $20,000, the estate tax valuation of the 180 shares of the stock in 1158 Fifth Avenue, Incorporated and the lease of Apartment 12 D at the death of Benjamin Arthur Aycrigg.
The said return showed gross income of $30,520.07, net income of $27,098.58, and a tax liability of $10,555.51, which has been satisfied by the payment of quarterly installments of $2,500 each in the year 1947 and by the payment of $555.51 with the return on January 14, 1948.
*317 14. The Maxraf acturer’s Trust Company of New York City transferred to Captain Soger Williams tbe 180 shares of the capital stock of 1158 Fifth Avenue, Inc., held by it as trustee under the will of Benjamin Arthur Aycrigg. Plaintiff never had physical possession of the stock or stock certificate and had no knowledge of its transfer to Captain Eoger Williams. The stock certificate stated on its face that:
The shares represented by this certificate are held subject to the terms and conditions of an indenture of lease dated the 23rd day of October, 1924, between 1158 Fifth Avenue, Inc., and the holder thereof, and also to all the terms and conditions of agreement between said corporation and its duly appointed agents for the management of the premises owned by said corporation.
This certificate is not assignable, and no rights shall be obtained in and to the shares represented thereby, unless the terms and conditions contained in said indenture of lease relating to the transfer thereof have been fulfilled.
15. On April 17,1947, plaintiff and her co-owners assigned the lease of Apartment 12 D to Captain Eoger Williams.
16. On audit of plaintiff’s income tax return for 1947, the Commissioner of Internal Eevenue allowed only $968.74 of the aforesaid $2,250.79 loss claimed by plaintiff, taking the position that the loss, if any, on the sale of the cooperative apartment was a capital loss and, therefore, that plaintiff was entitled to deduct only $968.74 of the said loss for the year 1947. Consequently, he determined that there was a deficiency in income taxes for the year 1947 in the amount of $755.12, computed by adding $1,282.05 ($2,250.79 minus $968.74) to plaintiff’s net income for the year 1947.
17. On November 29,1950, plaintiff and the Commissioner of Internal Eevenue, executed a Form 872, consenting to an extension of the period for assessment of income taxes until June 30, 1952. On February 8, 1952, a notice of deficiency (the so-called ninety-day letter) was sent to plaintiff by registered mail. Plaintiff paid ,ths alleged deficiency of $755.12 to the defendant on April' 21, 1952, and also paid to the defendant the sum of $183.71 ón May 28, 1952, as interest on the alleged deficiency. An assessment of $938.83 was then made against plaintiff on May 29,1952. Plaintiff filed a claim for the refund of $291.56 on March 17, 1952, *318 and a claim for the refund of $937.88 and $291.55 on December 21, 1953. Plaintiff never received official notice of rejection of the said claims for refund and filed her petition in this action on March 15,1955.
18. In computing the basis of her interest in Apartment 12 D, plaintiff omitted by mistake the item of $495.00 being one-fourth (%) of an assessment of $1,980.00 made by 1158 Fifth Avenue, Inc., in order to reduce the principal of a mortgage on the apartment building located at 1158 Fifth Avenue and to prevent a threatened foreclosure of the mortgage. The said sum of $495.00 was charged to and deducted from plaintiff’s remainder interest in the properties formerly owned by Benjamin Arthur Aycrigg and bequeathed by him as a part of the residue of his probate estate. The claims for refund of $291.56 on March 17,1952, and for $291.55 on December 21,1953, referred to in finding 17 related solely to the omission to add the item of $495.00 to basis.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and her petition is dismissed.