**Bert CROSSWHITE and Virginia Crosswhite**

**v.**

**The UNITED STATES.**

**No. 19–64.**

United States Court of Claims.

Dec. 16, 1966.

Robert Briggs, Portland, Or., attorney of record, for plaintiffs.

Saylor L. Levitz, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D..C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

On the basis of stipulated facts, both parties have filed motions for summary judgment in this action to recover income taxes paid by plaintiffs. The taxpayers, husband and wife, urge that gains from the sale of various parcels of real estate should be accorded capital gains treatment. The defendant would have us hold that the facts bring the case within the exclusionary language of Section 1221(1) of the Internal Revenue Code of 1954 (26 U.S.C. § 1221(1), 1958 ed.); that the land was "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Our reasoning coincides with this latter interpretation and we find, therefore, that the taxpayers are not entitled to the refund sought.[1]

Over a span of approximately 2½ years, plaintiffs subdivided and developed five tracts of real estate and sold a total of 168 lots.[2] During this period,

---

[1] Taxpayers seek a refund in the amount of $4,402.83 for the year 1961, and $1,430.57 for the year 1962.

[2] The various transactions may be summarized as follows:

| TRACT | ACQUIRED | COST | IMPROVEMENTS | SOLD | PRICE |
|---|---|---|---|---|---|
| Green Ridge___ | 1957 / 1961 | $8,000.00 | $16,500.12 | 4/61 | $47,500 |
| King Terrace__ | 2/61 | 18,780.00 | 16,239.48 | 4/61 | 67,600 |
| Lawnfield ____ | 2/62 | 37,723.99 | 44,967.99 | 4/62 | 180,000 |
| Sunrise Park__ | 2/62 | 27,000.00 | 5,824.00 | 12/62 | 72,800 |
| Gem Acres____ | 1/63 | 54,159.62 | 10,283.56 | 11/63 | 59,800 |

they were also the sole stockholders of an excavating company, a sand and gravel company, and a redi-mix concrete company.

We begin with the recognized principle that the "benefit" of capital gains treatment connotes no more than the term itself—an exception to the normal tax structure. "[T]he definition of a capital asset must be narrowly applied and its exclusions interpreted broadly." Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100 L.Ed. 29 (1955); see also Cranford v. United States, 338 F.2d 379, 383, 168 Ct.Cl. 46, 53 (1964). The statutory scheme of Section 1221 contemplates a distinction between appreciation in the value of property which accrues with the passage of time and profits and losses which arise from the regular conduct of a business venture. Malat v. Riddell, 383 U.S. 569, 572, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). Taxpayers, in asserting that their property was held in the traditional sense of an investment, must sustain their burden of demonstrating that the real estate falls outside the broad scope of "property held primarily for sale to customers in the ordinary course" of their trade or business.

Recently, the Supreme Court focused upon the term "primarily" as it appears in Section 1221(1) and declared it to be synonymous with "of first importance" or "principally." Malat v. Riddell, supra. The facts as agreed upon by the taxpayers fit quite comfortably into such a construction. It is conceded, with regard to four of the tracts, that they were acquired "for the purpose of improving, subdividing and selling the property." Each was "purchased for resale" and even the parcel which was acquired originally as an investment in 1957 changed its character in 1961 and was held thereafter for resale.[3] By their own admissions, therefore, taxpayers

have dealt a damaging blow to their position that the property was not held "principally" for sale.

As the language of Judge Whitaker in Miller v. United States, 339 F.2d 661, 663–664, 168 Ct.Cl. 498, 504 (1965) indicates, a more detailed list of judicial criteria has evolved from similar cases:

[A] few tests have been thought to be helpful, such as the purpose for which the property was acquired, the motive for selling it, the taxpayer's method of selling the land, his income from the sale of it compared with his other income, the extent of the improvements made to facilitate the sale of it, the frequency and continuity of sales, and the time and effort expended by taxpayer in promoting the sales in relation to his other activities.

See also Lazarus v. United States, 172 F.Supp. 421, 145 Ct.Cl. 541 (1959); McConkey v. United States, 130 F.Supp. 621, 131 Ct.Cl. 690 (1955); Di Lisio v. Vidal, 233 F.2d 909 (10th Cir. 1956). It has already been shown that the taxpayers acquired the property, not with a view primarily toward investment, but for the purpose of resale. With regard to the motives underlying the sale of the tracts, taxpayers argue that they hoped to thereby increase sales for their three related corporations. That they were desirous of enhancing the other enterprises, however, is of limited significance if they were engaged in the business of selling real estate. Individuals may conduct more than one business at a time and each will be taxed accordingly. Nadalin v. United States, 364 F.2d 431, 438, 176 Ct.Cl. —— (July 1966); Houston Deepwater Land Co. v. Scofield, 110 F.Supp. 394, 398 (S.D.Texas 1952).

Nor have the taxpayers been able to bring themselves within one of the "liquidation" situations, since the subdivision and sale of the property were not prompted by the necessity to liquidate inherited or unwanted investments,

---

3. Property, initially purchased as an investment, can later change from a capital asset to property which comes within the ambit of Section 1221(1) of the Internal Revenue Code. See, e. g., Thompson v. Commissioner of Internal Revenue, 322 F.2d 122, 127–128 (5th Cir. 1963).

or to raise funds to satisfy the needs of other businesses. See, e. g., *Nadalin,* supra, 364 F.2d at 437; Gordon v. United States, 159 F.Supp. 360, 365, 141 Ct.Cl. 883, 892 (1958).

We recognize that the taxpayers engaged in no advertising or promotions with respect to the sales. But this fact is overshadowed by their solicitation of buyers, their individual involvement in the five sales transactions, and the fact that all of the lots were conveyed to only two residential homebuilders, both of whom were personal acquaintances of the taxpayer-husband. Relevant, too, was the taxpayers' failure to retain independent brokers. Oahu Sugar Co. v. United States, 300 F.2d 773, 778, 156 Ct.Cl. 546, 555 (1962); Lazarus v. United States, supra, 172 F.Supp. at 425, 145 Ct.Cl. at 548; Smith v. Dunn, 224 F.2d 353, 357 (5th Cir. 1955).

A comparison of the taxpayers' gain from the disposition of real estate with their other income reveals that the former exceeded the latter for 3 years (1961, 1962, and 1963).[4] Still another comparison weakens the contention that the real estate was not held primarily for sale within the context of Section 1221(1). It has been stipulated that plaintiffs effected extensive improvements to the property, including the construction of roads, curbs, and water systems, as well as the leveling, surveying, and platting of all the tracts. The total acquisition cost of the property was $145,663.61; the amount expended on developing and improving the subdivisions was the substantial sum of $93,815.15. See Browne v. United States, 356 F.2d 546, 174 Ct.Cl. —— (1966).

The frequency and continuity of sales is yet another factor which the courts have considered. *Lazarus,* supra, 172 F.Supp. at 426, 145 Ct.Cl. at 548–549. Admittedly, the five sales transactions involved here were neither frequent nor continuous in the literal sense. The cases are clear, however, in holding that no one factor, standing alone, is conclusive. Cebrian v. United States, 181 F. Supp. 412, 149 Ct.Cl. 357 (1960); Boeing v. United States, 168 F.Supp. 762, 144 Ct.Cl. 75 (1958); Garrett v. United States, 120 F.Supp. 193, 128 Ct.Cl. 100 (1954). Rather, all of the circumstances must be blended together to form a judicial kaleidoscope upon which a decision may be patterned.

It is our opinion that the stipulated facts, viewed in their totality, show that plaintiffs have not sustained their burden of proving that the profits obtained from the sale of the lots should be taxed as capital gains. See Galena Oaks Corp. v. Scofield, 116 F.Supp. 333, 335 (S.D.Texas 1953), aff'd, 218 F.2d 217 (5th Cir. 1954); Johnson v. United States, 188 F.Supp. 939, 940 (N.D.Cal. 1960). Accordingly, defendant's cross-motion for summary judgment is granted; plaintiffs' motion for summary judgment is denied and the petition is dismissed.

---

4. During the year 1962, for example, their gains from real estate transactions and their income from other sources were $30,352.30 and $28,533.34, respectively.