**CHILTON T.C. AU**

v.

**The UNITED STATES.**

**No. 23–82T.**

United States Claims Court.

Feb. 28, 1984.

Chilton T.C. Au, Honolulu, Hawaii, pro se.

Jay G. Philpott, Jr., Washington, D.C., with whom was Asst. Atty. Gen., Glenn L. Archer, Jr., Washington, D.C., for defendant.

OPINION

MARGOLIS, Judge.

This case is before the Court on cross motions for summary judgment. Plaintiff, Chilton T.C. Au, acting *pro se*, brings this tax refund suit seeking a determination that the $90,000 loss he sustained when he sold certain real estate was an ordinary loss, not a capital loss. Plaintiff seeks a refund for the 1975 tax year of $2,099 plus interest.[1] Plaintiff claims he is entitled to loss

---

1. For the purpose of these motions, since Mr. and Mrs. Au filed a joint income tax return and claim for refund, it is assumed that Mrs. Au is a proper party, though not named in the Complaint. However, plaintiff, Mr. Au, may also show he was sole source of the alleged over-

carryback and carryover deductions for the 1975 operating loss which will result if the loss can be treated as an ordinary loss. Plaintiff has moved for summary judgment claiming that under Internal Revenue Code section 1237[2] the real estate cannot be a capital asset because plaintiff held it for less than five years and because plaintiff purchased another parcel of real estate during that time. Therefore, plaintiff contends he should be allowed ordinary loss treatment.

Defendant opposes plaintiff's motion contending that section 1237 is not applicable to this case. Defendant has cross moved for summary judgment alleging that plaintiff did not hold his property primarily for sale to customers in the ordinary course of a trade or business. Therefore, defendant contends the real estate was a capital asset, and plaintiff's loss from its sale was a capital loss. This Court finds for the defendant.

## FACTS

Both parties agree that the facts are not in dispute and that the matter is ripe for summary judgment. During the period involved plaintiff resided in Hawaii where he was an assistant manager and operator of a restaurant. On September 17, 1973, plaintiff purchased some fourteen acres of commercially zoned real estate in Anchorage, Alaska, known as "the Vance Phillips' Property" (the property). Plaintiff contends that he acquired the property to develop a shopping center. From the purchase in September 1973 to the sale on June 24, 1975, no physical improvements were made on the property.

The terms of purchase for the property were $1,200,000, with a down payment of $150,000, leaving a balance due by note of trust of $1,050,000. In addition, plaintiff paid a $90,000 real estate broker's commission to Mr. Takeshi Oie, plaintiff's realtor.

After receiving two extensions, plaintiff was unable to make payment under the note of trust and was forced to sell the property. The purchaser of the property agreed to pay plaintiff his total cost of acquiring the property. Plaintiff, however, mistakenly omitted from the sales agreement the $90,000 commission which he had paid on acquisition. Plaintiff, therefore, sold the property for $90,000 less than what he had paid for it.

Plaintiff reported his loss as a capital loss in the adjusted amount of $85,318 on his 1975 Individual Income Tax Return. Plaintiff timely filed an amended return claiming his loss as an ordinary loss. The Internal Revenue Service (IRS) determined that plaintiff suffered a capital loss, not an ordinary loss, and disallowed the deduction.

## DISCUSSION

■ The determination of the IRS is presumed to be correct, and plaintiff has the burden of proving it to be wrong. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Jupiter Corporation v. United States*, 2 Cl.Ct. 58, 61 (1983) (Lydon, J.).

■ Defendant is correct in asserting that section 1237 is not applicable to this case. That section applies only to the gain, not loss, realized from the sale of real estate that has been subdivided and sold in lots. No such situation is presented here.

The question of whether the sale of real estate generates a capital or an ordinary gain or loss is "old, familiar, recurring, vexing and oft-times elusive...." *Huey v. United States*, 205 Ct.Cl. 557, 564, 504 F.2d 1388, 1391 (1974) *quoting Thompson v. Commissioner*, 322 F.2d 122, 123 (5th Cir.1963). The statutory test is whether the real property sold by plaintiff was held "primarily for sale to customers in the ordinary course of his trade or business." 26 U.S.C. § 1221(1). If so, plaintiff's loss is an ordi-

---

payment so that Mrs. Au does not have any interest in any overpayment. *Gens v. United States*, 673 F.2d 366 (Ct.Cl.1982), *cert. denied*, 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982).

**2.** All statutory references are to the Internal Revenue Code of 1954, 26 U.S.C., as amended.

nary loss and fully deductible from ordinary income. 26 U.S.C. § 165(a), (c). If not, plaintiff's loss is a capital loss with limited deductibility under section 1211.

As the predecessor Court of Claims stated in *Crosswhite v. United States:*

The statutory scheme of Section 1221 contemplates a distinction between appreciation in the value of property which accrues with the passage of time and profits and losses which arise from the regular conduct of a business venture.

177 Ct.Cl. 671, 673, 369 F.2d 989, 991 (1966). "[T]he definition of a capital asset must be narrowly applied and its exclusions interpreted broadly." *Id.* at 672–73, 369 F.2d at 991, *quoting Corn Products Refining Co. v. Commissioner,* 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100 L.Ed. 29 (1955).

There is no mechanical test for determining whether a piece of real property was held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. A case-by-case determination is necessary. *Huey v. United States,* 205 Ct.Cl. at 564, 504 F.2d at 1392; *Goodman v. United States,* 182 Ct.Cl. 662, 668, 390 F.2d 915, 919 (1968), *cert. denied,* 393 U.S. 824, 89 S.Ct. 87, 21 L.Ed.2d 96 (1968). However, several decisions have set forth factors to be considered in making this determination. These factors include: the purpose for which the land was acquired, the motive for selling, the extent of improvements made to facilitate sales, the frequency and continuity of sales, the method employed in selling, income from sales as compared to the taxpayer's other income, and the time and effort expended by the taxpayer in promoting sales. *Huey v. United States,* 205 Ct.Cl. at 564, 504 F.2d at 1392; *Miller v. United States,* 168 Ct.Cl. 498, 504, 339 F.2d 661, 663–64 (1964); *Lazarus v. United States,* 145 Ct.Cl. 541, 545–551, 172 F.Supp. 421, 424–427 (1959). No one factor is conclusive. *Crosswhite v. United States,* 177 Ct.Cl. at 675, 369 F.2d at 992.

Applying these factors to the record in this case, it is plain to this Court that plaintiff did not hold the property primarily for sale to customers in the ordinary course of a trade or business of buying and selling real estate. Plaintiff has stated two contradictory purposes for acquiring the property. First, in his answers to defendant's interrogatories, plaintiff stated that he purchased the property to develop a shopping center. Later, both in his opposition and reply and in his response to defendant's reply, plaintiff stated that he purchased the property for profit, and admitted that it was not connected with a trade or business. Neither of these stated purposes suggests that the property was held for sale to customers in the ordinary course of business.

During the three year period from 1973 through 1975, plaintiff purchased only two pieces of real estate, one of which was the property, and sold only the property. Plaintiff, a resident of Hawaii, bought and held two properties located in Alaska. He did not develop or make improvements to the property to facilitate its sale. Plaintiff had no real estate license, and his entire income was derived from sources other than transactions in real estate. Plaintiff relied primarily upon his realtor, Mr. Oie, to plan and execute his real estate transactions. The extent of plaintiff's participation in the transactions relating to the property was approving or disapproving Mr. Oie's actions. In short, plaintiff was an investor, not a dealer, in real estate.

In response to defendant's interrogatories, plaintiff submitted four letters to him by Mr. Oie and an affidavit by Mr. Oie. Giving the plaintiff the benefit of all doubts,[3] this evidence shows only that Mr. Oie was periodically testing the market for a potential sale or joint venture opportunity. When viewed in light of plaintiff's contradictory purpose for acquiring the property, the absence of any improvements to the property, the forced sale of only one piece of property during a three year period which resulted in a loss, plaintiff's residence compared to the location of the property,

---

**3.** Three of the letters, in which Mr. Oie discusses potential sales or development opportunities for the property, were dated after plaintiff sold the property.

and plaintiff's near total reliance on his realtor, this Court is led to its conclusion that plaintiff did not hold the property primarily for sale to customers in the ordinary course of his trade or business. Plaintiff was clearly not in the business of buying and selling real estate. Plaintiff has failed to meet his burden of disproving the IRS's determinations.

Accordingly, the defendant's cross motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied.[4] The Complaint will be dismissed by the Clerk.

4. Plaintiff also claimed punitive damages for defendant's alleged willful withholding of a notice of deficiency. This claim, as presented, is wholly unsubstantiated and without merit.